**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MEGAN FOX and BRIDGET MCMAHON, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>  v.<br><br>CHIPOTLE MEXICAN GRILL, INC., t/d/b/a CHIPOTLE,<br><br>        Defendant. | CIVIL ACTION NO. 2:20-cv-01448-WSS |

**DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO COMPEL**

Pursuant to the Court's November 22, 2021 Minute Entry following a status conference with the parties (Doc. 88), Defendant Chipotle Mexican Grill, Inc. ("Chipotle") submits this supplemental brief in support of its October 5, 2021 meet and confer letter (Supp. Ex. 2), which the Court acknowledged constitutes a motion to compel discovery responses from Plaintiffs.

**I.    Plaintiffs Failed to Comply with Basic Discovery Norms in Their Responses. (*E.g.*, Interrogatory Nos. 2, 4, 9, & 15; Request for Production Nos. 4, 10, 14 & 15)**

As addressed at the November 22, 2021 status conference, Plaintiffs' discovery responses (Supp. Ex. 1) lacked several basic discovery response requirements. First, in response to several discovery requests (including those discussed in Part II *infra*), Plaintiffs objected on the ground of attorney-client privilege, and further discussion and correspondence between counsel confirmed that Plaintiffs were actually withholding responsive information and documents pursuant to that objection. Despite multiple requests for a privilege log, Fed. R. Civ. P. 26(b)(5)(A), Plaintiffs inexplicably failed to provide one or explain why they had not done so. Only after Chipotle raised this issue with the Court directly at the status conference did Plaintiffs finally commit to providing a privilege log, after the Court ordered them to do so by December 6, 2021. As of the preparation of this brief, Chipotle has not received Plaintiffs' privilege log, and therefore reserves the right to request that the Court formally compel production of a log stating the date, type of document, author(s), recipient(s), general subject matter of the document, and the privilege being claimed.

Second, Plaintiffs failed to provide basic information known to them at the time of their discovery responses, requiring unnecessary time and expense to uncover the deficiencies and raise them with Plaintiffs' counsel and the Court. (Supp. Ex. 2 at 2–3, ROGS 2, 4, 9, & 15.) For example, in the case of Interrogatory Nos. 2 and 4, Plaintiff McMahon failed to identify at least the following witnesses: Isabella Salpietro (a long-standing friend of both Plaintiffs and daughter of Plaintiffs' counsel) and Michael Clayton (her boyfriend, who accompanied her on the evening of her

Complaint allegations). Chipotle was forced to discover these basic facts, certainly known to Plaintiff McMahon at the time of her discovery responses on July 1, 2021, by way of deposition on September 29, 2021. And in the case of Interrogatory No. 15, Plaintiff failed to provide fulsome information regarding the basis for their (false) Complaint allegation that Chipotle instituted a "company policy" to round down the change due of cash-paying customers. Plaintiffs alleged in their July 1, 2021 discovery responses that a Chipotle employee stated to a customer (unidentified by Plaintiffs) "that the refusal to provide change is 'management policy.'" (*Id.* at 3.) Only after Chipotle requested that Plaintiffs supplement their response did Plaintiffs identify the alleged customer as William Lestitian, who is the *CEO and Managing Shareholder of Plaintiffs' counsel's law firm.*[1] (Supp. Ex. 3 at 3.) The Court should order Plaintiffs to provide supplemental responses to Interrogatory Nos. 2, 4, 9, and 15, verifying under oath that such responses are complete.

Third, Plaintiffs demonstrably failed to even conduct a good faith search for documents responsive to Chipotle's requests. (Supp. Ex. 2 at 3–6, RPD Nos. 4, 10, 14, & 15.) For example, for Request for Production No. 4 (for Plaintiffs' communications with others about the Complaint allegations or subject matter), Plaintiff McMahon testified that although she sent text messages to Plaintiff Fox and Ms. Salpietro, that she did not look for or provide them to her counsel. (Supp. Ex. 4 at 19:9–21.) Nor did Plaintiff McMahon do anything after the filing of the Complaint to search for potentially responsive documents in response to Chipotle's discovery requests. (*Id.* at 20:13–21:4, 24:21–25:1.) These actions bespeak an unacceptable lack of cooperation in discovery. Accordingly, the Court should order Plaintiffs to fully comply with Request for Production Nos. 4, 10, 14 and 15, verify that all responsive documents within their possession, custody, or control have been produced following thorough searches, including on all electronic platforms on which

---

[1] https://www.rothmangordon.com/attorneys/william-e-lestitian/ (last visited December 1, 2021).

they were potentially made or are stored, and fully describe the searches performed.

## II. Federal Common Law Governs the Privilege Inquiry as to Absent Class Members, and Privilege Does Not Bar Chipotle's Requests for Factual Information. (Interrogatory Nos. 10 & 11, Request for Production Nos. 11 and 12)

In its Minute Entry, the Court requested briefing on choice of law (between Pennsylvania and federal common law) as to the attorney-client privilege as applied to class members. In short, federal privilege law applies to questions of federal law in class actions pending in federal court (including certification under Rule 23), and in any event, neither Pennsylvania nor federal common law bars Chipotle's discovery requests for non-privileged factual information. Interrogatory Nos. 10 and 11 asked Plaintiffs to identify and describe alleged instances of change shorting by Chipotle customers of which they or their counsel were aware via their counsel's solicitation website or otherwise, and Requests for Production Nos. 11 and 12 requested documents reflecting submissions of information of alleged instances of change shorting by Chipotle customers via Plaintiffs' counsel's solicitation website or otherwise. In response, Plaintiffs objected on the grounds of attorney-client privilege between putative class members (before certification) and putative class counsel under Pennsylvania law.

Federal Rule of Evidence 501 provides, first, that federal common law "governs a claim of privilege unless a contrary federal authority provides otherwise, and second, that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Enacted in 1975, Rule 501 displaced the prior rule that "[t]he issue of whether or not a certain matter is privileged [was] governed by the law of the state in which the United States court is held." *Spray Prods. Corp. v. Strouse, Inc.*, 31 F.R.D. 244, 246 (E.D. Pa. 1962).

Regarding the attorney-client privilege in federal class actions, at least two U.S. Supreme Court decisions in the last decade have ratified the notion that a putative class member is not considered a "represented" party before class certification under Rule 23. *Standard Fire Ins. Co.*

3

*v. Knowles*, 568 U.S. 588, 593 (2013) ("'a nonnamed class member is [not] a party to the class-action litigation *before the class is certified*'" (emphasis in original) (quoting *Smith v. Bayer Corp.*, 564 U.S. 299, 313 (2011))). Without party status, putative class members in federal court cannot be deemed to be "represented" by the named plaintiff's attorney. The Third Circuit has also concurred that "class counsel do not possess a traditional attorney-client relationship with absent [Rule 23] class members." *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 313 (3d Cir. 2005); *see Walney v. Swepi LP*, No. CV 13-102 ERIE, 2017 WL 319801, at *13 (W.D. Pa. Jan. 23, 2017). Thus, under federal law absent putative class members are not "clients" of putative class counsel such that there is an inviolate attorney-client privilege with all such persons, known and unknown.[2]

Meanwhile, Pennsylvania state law represents the minority view that putative class members are represented parties prior to certification. *Bell v. Beneficial Cons. Disc. Co.*, 348 A.2d 734, 736 (Pa. 1975); Pa. R. Civ. P. 1701. Yet Pennsylvania federal courts properly recognize the applicability of *federal* privilege law to federal questions; in fact, the only reported federal decisions that applied Pennsylvania privilege law either are distinguishable or were later reversed. First, *Dondore v. NGK Metals Corporation* involved consolidated federal individual toxic tort actions while, at the same time, a Pennsylvania state class action by different plaintiffs against the same defendants was also pending. Under those circumstances, the Pennsylvania Eastern District Court applied Pennsylvania law to prohibit defense counsel from contacting or interviewing putative class members in the state class action. 152 F. Supp. 2d 662, 662–64 (E.D. Pa. 2001). As it did not concern a federal class action, *Dondore* does not implicate Federal Rule 23. Still, some courts have misapplied *Dondore* to impose Pennsylvania privilege law in federal class actions.

---

[2] *See, e.g.*, *The Kay Co., LLC v. Equitable Prod. Co.*, 246 F.R.D. 260, 264 (S.D.W. Va. 2007) (citing to ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 07-445 (2007), which reflects the majority rule that prior to class certification there is no lawyer-client relationship between the plaintiff's counsel and the putative class members"); *see also* Restatement (Third) of Law Governing Lawyers § 99 cmt. 1 (2000).

4

Most notably, *Weller v. Dollar General Corporation*, a reported magistrate judge decision also from the Eastern District, applied Pennsylvania privilege law for a motion for sanctions against defendants whose counsel obtained witness declarations from putative class members to oppose class certification. No. 17-2292, 2019 WL 1045960, at *1 (E.D. Pa. Mar. 4, 2019). However, the district judge rejected this decision, explaining that the case was "venued in federal court, not state court, and therefore federal procedural law must govern." *Weller*, No. 17-2292, Order at 1 n.1 (E.D. Pa. Aug. 5, 2019) (attached as Supp. Ex. 5). "Since a putative class member is not considered a represented party in a Fed. R. Civ. P. 23 proceeding in federal court, neither Pa. R.P.C. 4.2 nor E.D. Pa. Civ. P. 83.6 IV B, both of which apply only to represented parties, are applicable."[3] *Id.* at 2 n.1. In fact, one Pennsylvania federal district court has held that federal privilege law applies when deciding whether the class certification requirements of Federal Rule 23 are met. *Lloyd v. Covanta Plymouth Renewable Energy, LLC*, 532 F. Supp. 3d 259, 260–61 (E.D. Pa. 2021).

Importantly, most cases addressing the privilege choice-of-law issue attempt to answer an entirely different question than is posed here: whether defense counsel in a class action may communicate *ex parte* with putative class members pre-certification. This Court need not definitively answer that question because the information sought by Chipotle's discovery requests that Plaintiffs have resisted is *purely factual information* that is *categorically not privileged* as a matter of law. There is no question before the Court of whether Chipotle's counsel may interview putative class members. Undersigned counsel represents that it has not or attempted to do so.

Rather, under both Pennsylvania and federal common law, the attorney-client privilege does not protect underlying facts from discovery solely by virtue of being included within attorney-client communications. *Martin Marietta Materials, Inc. v. Bedford Reinforced Plastics, Inc.*, 227

---

[3] Importantly, Pennsylvania Rule of Professional Conduct 4.2 is identical to its counterpart in the ABA Model Rules, which the ABA has expressed does not apply to putative class members prior to class certification. *See* note 2 *supra*.

5

F.R.D. 382, 392 (W.D. Pa. 2005); *Custom Designs & Mfg. Co. v. Sherwin-Williams Co.*, 39 A.3d 372, 378 (Pa. Super. 2012); *Gould v. City of Aliquippa*, 750 A.2d 934, 938 (Pa. Commw. Ct. 2000). Chipotle seeks just this type of non-privileged information in Interrogatory Nos. 10 and 11.

The same is true regarding Requests for Production Nos. 11 and 12. While Plaintiffs may contend that written or electronic submissions themselves are privileged (the reported case law on that issue is heavily fact- and circumstance-specific), the underlying factual information contained therein is not. Such information is no different than information conveyed in any other communication between a client and an attorney. *Morisky v. Pub. Serv. Elec. & Gas Co. ("PSE&G")*, 191 F.R.D. 419, 424 (D.N.J. 2000) ("[F]actual information conveyed to an attorney by a client is not shielded from discovery by the attorney-client privilege…. [T]he questionnaires contain fact inquiries that have nothing to do with legal representation.").[4]

In fact, courts have directed that class action defense counsel in this posture do *exactly* what Chipotle did in this case: serve formal discovery on putative class counsel for the non-privileged information. *Penk v. Oregon State Bd. of Higher Educ.*, 99 F.R.D. 511, 516–17 (D. Or. 1983) (on reconsideration) ("Factual information conveyed to an attorney by a party/client is not shielded from discovery by the attorney-client privilege; such information is discoverable from the party/client through interrogatories served directly on the party/client…. [F]actual information gleaned by plaintiffs' counsel from the questionnaires sent to class members is discoverable by defendant through interrogatories served on plaintiffs' counsel."); *see also Harlow v. Sprint Nextel Corp.*, No. 08-2222-KHV-DJW, 2012 WL 646003, at *6 n.28 (D. Kan. Feb. 28, 2012); *Morris v. Gen. Motors Corp.*, No. 2:07-MD-01867, 2010 WL 931883, at *6 (E.D. Mich. Mar. 11, 2010).

---

[4] In addition, any objection that questionnaires received by Plaintiffs' counsel constitute work product is waived. The actual questions conceived and organized by Plaintiffs' counsel are the only arguable work product, which Plaintiffs' counsel has made publicly available online. https://chipotlechangeclassaction.com/sign-up-now/ (last visited December 1, 2021); *see Morisky*, 191 F.R.D. at 425.

Thus, there is no legitimate privilege objection, whether under Pennsylvania or federal common law, to the purely factual information sought by Interrogatory Nos. 10 and 11 and Requests for Production Nos. 11 and 12. Accordingly, the Court should compel Plaintiffs to produce all non-privileged factual information responsive to Interrogatory Nos. 10 and 11 and all documents containing such information responsive to Request for Production Nos. 11 and 12, with a complete privilege log that identifies any redacted or withheld responsive information and documents.

### III. Chipotle's Requests for Telephone and Financial Records Are Reasonable. (Nov. 9 Non-Party Subpoenas; Interrogatory No. 12; Request for Production No. 13)

During class certification discovery, Chipotle has sought telephone records of both named plaintiffs and putative class representatives Bridget McMahon and Megan Fox, as well as fact witness Isabella Salpietro, via non-party subpoenas for the production of documents to their respective cellular telephone providers. These party discovery requests and subpoenas legitimately seek information that bears on the class certification inquiry and are reasonable in time and scope.

First, telephone records of calls and text messages involving these three witnesses around the time of the allegations in the Complaint are clearly relevant to Plaintiffs McMahon and Fox's individual claims, on which Chipotle "is entitled, and indeed required, to discharge [its] obligation of due diligence to" conduct discovery. *In re Oxford Health Plans, Inc.*, 191 F.R.D. 369, 380 (S.D.N.Y. 2000). Among other things, Plaintiffs must prove that they justifiably relied on an unfair or deceptive trade practice (under the Pennsylvania UTPCPL) and that such reliance caused them an actual loss. *Toy v. Metro Life Ins. Co.*, 928 A.2d 186, 201–02 (Pa. 2007). Discovery of any information tending to prove or disprove Plaintiffs' knowledge is relevant to the latter two elements. *Corsale v. Sperian Energy Corp.*, 412 F. Supp. 3d 556, 566 (W.D. Pa. 2019).

Second, telephone records of calls and text messages for reasonable periods of time before and after the time of the allegations in the Complaint are also relevant to the class certification

inquiry. Conspicuously omitted from Plaintiffs' Complaint and from any document served in discovery throughout this case is any mention that both named Plaintiffs have been close, longstanding friends with each other, and with Ms. Salpietro, who is the *daughter of putative class counsel*, since 2012. (Supp. Ex. 4 at 42:12–24.) These relationships bear on the adequacy of representation under Rule 23(a)(4). They also bear on the question of whether these individuals truly relied on representations of Chipotle in the transactions at issue or were simply trying to manufacture a change shortage claim at the request of class counsel's daughter.

"Courts sometimes express concern about close relationships between class representatives and counsel because it might create the appearance of impropriety or the plaintiff might want to maximize the counsel's fee award to the detriment of class members." *McDonough v. Toys R Us, Inc.*, 638 F. Supp. 2d 461, 478 (E.D. Pa. 2009). Among other things, class action law presumes that class representatives are fiduciaries of the proposed class and its unnamed members and that class representatives' function is to monitor class counsel. As a result, courts have expressed concern when the proposed class representative has a close relationship with class counsel—whether by family, business or profession, or close friendship. *London v. Walmart Stores, Inc.*, 340 F.3d 1246, 1255 (11th Cir. 2003) ("The long-standing personal friendship of [the class representative] and [class counsel] casts doubt on [the representative's] ability to place the interests of the class above those of class counsel…"). Because "[t]here ought therefore to be a genuine arm's-length relationship between class counsel and the named plaintiffs," *Redman v. RadioShack Corp.*, 768 F.3d 622, 638 (7th Cir. 2014), discovery of records that tends to demonstrate the length and depth of personal relationships is relevant to adequacy of representation. Moreover, the time period of telephone records sought to investigate these relationships is reasonable. Though the three have been close personal friends since at least 2012, Chipotle reasonably only requested

records dating back to 2018 for Plaintiffs McMahon and Fox and 2020 (the beginning of the class period) for Ms. Salpietro. Finally, any objections that the requests are not limited in scope or topic or would disclose privileged or confidential communications is meritless, as the requests do not seek any substantive communications, but only records of the fact of communications themselves.

Finally, Chipotle has sought limited financial records; namely, information and documents that reflect Plaintiffs' recent consumer spending practices. A potential pattern of consumer spending practices involving the use of credit or debit cards at Chipotle or similar establishments is relevant because of the possibility it could speak to the reasons for an individual's choice to use a certain form of payment at a certain time. For instance, prior to her deposition, Ms. McMahon's purchase history as a Chipotle Rewards member revealed over seventy separate purchases, all of which involved her use of card as payment *except for one*: the purchase alleged in the Complaint. (Supp. Ex. 6.) Moreover, at her deposition, Ms. McMahon testified that she used cash intentionally, with knowledge of there having been an issue paying in inexact cash and receiving change at Chipotle at that time and stage of the pandemic. (Supp. Ex. 4 at 45:16–46:25.) On this basis, Chipotle is entitled to develop inferences regarding Plaintiffs' spending practices on similar products from similar merchants or retailers around that time because it is relevant to the issue of reliance. And the time period, limited to approximately the same as the class period, is reasonable as well. Accordingly, the Court should compel Plaintiffs to provide complete supplemental and verified responses to Interrogatory No. 12 and Request for Production No. 13. Chipotle further reserves the right to oppose any formal motion regarding any of its non-party subpoenas.

**IV.    Plaintiffs' Attorney and Expert Fee Arrangements Are Discoverable.
         (Request for Production Nos. 6 & 20)**

Because Plaintiffs seek in their Complaint, among other relief, attorneys' fees and expenses, Chipotle requested that Plaintiffs produce evidence of their damages, including their

engagement or fee agreement with counsel. Plaintiffs objected solely on the ground of attorney-client privilege. However, the attorney-client privilege generally does not protect fee arrangements or billing records unless they disclose confidential client communications.[5] *Montgomery Cty. v. MicroVote Corp.*, 175 F.3d 296, 304 (3d Cir. 1999); *Breslin v. Dickinson Twp.*, No. 1:09-CV-1396, 2011 WL 2926665, at *1 (M.D. Pa. July 18, 2011); *Levy v. Senate of Pa.*, 65 A.3d 361, 373–74 (Pa. 2013). "Fee arrangements are relevant to the ability of named plaintiffs to protect the interest of potential class members and hence are a proper subject for discovery." *Epstein v. Am. Rsrv. Corp.*, No. 79 C 4767, 1985 WL 2598, at *3 (N.D. Ill. Sept. 18, 1985).

Lastly, Chipotle requested that Plaintiffs produce materials exchanged with expert witnesses, including those required by Federal Rule 26. Plaintiffs' production on October 2, 2021 (the first Affidavit of Matthew E. Pohl and its attachments) included no engagement agreement, no invoices for services, and no written communications not exempted from disclosure under Rule 26(b)(4)(C) (or a confirmation that no such discoverable documents or communications exist). Chipotle is fully entitled to production of these materials. Accordingly, the Court should compel Plaintiffs to fully comply with Request for Production Nos. 6 and 20 and to include within a complete privilege log reflecting any redacted or withheld responsive information and documents.

## CONCLUSION

For the foregoing reasons, Chipotle respectfully requests that the Court compel Plaintiffs to fully comply with Chipotle's discovery requests and Plaintiffs' discovery obligations in this case. A proposed form of order has been filed contemporaneously herewith.

---

[5] In that scenario, references to attorney-client communications may be redacted as privileged before the document is produced. *Slusaw v. Hoffman*, 861 A.2d 269, 273 (Pa. Super. 2004).

Dated: December 6, 2021

/s/ *Elizabeth Bulat Turner*
Elizabeth Bulat Turner (admitted *pro hac vice*)
Bar I.D. GA 558428
Robert J. Mollohan, Jr. (admitted *pro hac vice*)
Bar I.D. GA 984253
MARTENSON, HASBROUCK & SIMON LLP
2573 Apple Valley Road NE
Atlanta, GA 30319
Telephone: (404) 909-8100
bturner@martensonlaw.com
rmollohan@martensonlaw.com

-and-

Lindsey Conrad Kennedy
Bar I.D. PA 318318
Derek J. Illar
Bar I.D. PA 307492
ECKERT SEAMANS CHERIN & MELLOTT, LLC
600 Grant Street, 44th Floor
Pittsburgh, PA 15219
Telephone: (412) 566-2105
lkennedy@eckertseamans.com
dillar@eckertseamans.com

*Attorneys for Defendant Chipotle Mexican Grill, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2021 the foregoing **DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO COMPEL** has been sent via ECF notice to Plaintiffs' counsel:

Frank G. Salpietro, Esq.
Rothman Gordon, P.C.
310 Grant Street - Third Floor
Pittsburgh, PA 15219
(412) 338-1185 (telephone)
(412) 246-1785 (facsimile)
fgsalpietro@rothmangordon.com

*/s/ Elizabeth Bulat Turner.*
Elizabeth Bulat Turner
MARTENSON, HASBROUCK & SIMON LLP
2573 Apple Valley Road NE
Atlanta, GA 30319
Telephone: (404) 909-8100
bturner@martensonlaw.com