IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIDGET MCMAHON and JAMES RICE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CHIPOTLE MEXICAN GRILL, INC., t/d/b/a CHIPOTLE,<br><br>Defendant. | CIVIL ACTION<br><br>No. 2:20-cv-01448-WSS<br><br>**A JURY TRIAL IS DEMANDED** |

## AMENDED CLASS ACTION COMPLAINT

NOW COME Plaintiffs, Bridget McMahon ("Plaintiff McMahon" or "McMahon"), and James Rice ("Plaintiff Rice" or "Rice"), on behalf of themselves and all others similarly situated, and make the following claims against Defendant, Chipotle Mexican Grill, Inc., t/d/b/a Chipotle ("Chipotle"):

### INTRODUCTION

This is an action brought by Plaintiff McMahon and Plaintiff Rice, on behalf of themselves and all others similarly situated. Chipotle has engaged, and upon information continues to engage, in several illegal, discriminatory and confusing corporate policies and practices, as more fully set forth herein. Among other things, Chipotle engages in a policy and/or practice of misappropriation of consumer funds and unfair trade practices by refusing and failing, without legal justification, to provide proper change or credit to consumers using cash to make purchases at Pennsylvania Chipotle stores. As a result, Chipotle made a conscious decision to give to itself by enhancing its own profits, rather than giving back to the community.

## FACTUAL BACKGROUND

1. Plaintiff McMahon is a resident of Allegheny County in the Commonwealth of Pennsylvania. McMahon brings this action on behalf of herself and all others similarly situated.

2. Plaintiff Rice is a resident of Montgomery County in the Commonwealth of Pennsylvania. Rice brings this action on behalf of himself and all others similarly situated.

3. Defendant Chipotle, upon information and belief, is a multi-billion dollar Delaware Corporation which has a headquarters located in California, but which owns and operates a chain of at least 96 fast casual restaurants in the Commonwealth of Pennsylvania.

4. Upon information and belief, Defendant Chipotle has instituted a company policy and/or practice, or has otherwise acquiesced in a practice, whereby its employees do not return the full amount of change due to a consumer, but instead round down the change due, return the lower amount to the consumer, and pocket the difference.

5. On or about August 18, 2020, Plaintiff McMahon entered the Chipotle store at 4960 William Flynn Highway, Allison Park, Pennsylvania, to purchase prepared food to go. Plaintiff's total purchase was $15.51. A copy of Plaintiff's receipt is attached hereto as **Exhibit 1.**

6. To pay for the purchase, Plaintiff McMahon tendered cash in the form of a $20.00 bill.

7. The Defendant's cashier accepted McMahon's tender.

8. After Plaintiff McMahon's order was prepared and bagged and handed to McMahon, the Defendant's cashier did not return the $4.49 in change indicated on the receipt. Instead, Chipotle returned only $4.00 to Plaintiff McMahon, thereby converting $0.49 without providing a credit or other compensation to Plaintiff McMahon.

9. Thus, rather than giving the consumer his or her proper change, or a credit on future purchases, or the benefit of a corporate policy by rounding the purchase price down, the purchase price would effectively be rounded up by the cashier (despite what is reflected on the consumer's receipt) so that Chipotle, and not the consumer, benefits.

10. Thus, and without proper effective warning, McMahon's purchase of $15.51 cost Plaintiff $16.00, which is $0.49 more than the advertised price, simply by virtue of Plaintiff's use of cash as the form of legal tender.

11. This policy or practice not only discriminates against consumers who do not have, or do not wish to use, credit cards, but also results in a tax-free cash windfall to Chipotle because (by example and in the case of Plaintiff McMahon), Chipotle would report receipt of $15.51 to Department of Revenue authorities, when in reality it received $16.00 by virtue of its improper and illegal conduct.

12. On October 10, 2020, Plaintiff Rice entered the Chipotle store at 1515 Main Street in Warrington, Pennsylvania, ordered two items for $10.55, and tendered a $20.00 bill to the cashier. Consistent with what is believed and therefore averred to be Defendant Chipotle's corporate policy or practice, the Defendant's representative accepted the tender of $20.00, and then handed Plaintiff Rice a receipt, his order, and $9.00 in change. The Chipotle receipt showed change due to Plaintiff Rice of $9.45,

which was not the amount returned to him by Chipotle. A copy of the receipt and the change received by Plaintiff Rice is attached hereto as **Exhibit 2**.

13. When Plaintiff Rice complained to the cashier that he had not received the proper change, the cashier stated that, at the instruction of his manager, no coins were to be returned as change to a cash-paying customer.

14. Plaintiff Rice was also subsequently short-changed by the Chipotle store in Jenkinstown/Abington with the same result, but he did not retain his receipt and cannot recall the date of the transaction.

15. Preliminary discovery in this matter reveals, upon information, that Chipotle knows that numerous other Pennsylvania consumers have complained of similar improper treatment by Chipotle, and that there are likely even more consumers affected by Chipotle's conduct who did not take the time to complain in writing. Chipotle is, at this time, in exclusive possession of evidence (stored in its data warehouse system or otherwise) which would substantiate, at minimum, the number of transactions where cash was tendered, the receipts deceptively showing that change (other than whole dollars) was due or paid, and that the proper change was not returned.

16. Upon information and belief, numerous other Pennsylvania consumers who purchased food and services at Chipotle suffered the same fate as Plaintiffs McMahon and Rice, whereby Chipotle pocketed and misappropriated funds belonging to the consumer for Chipotle's financial benefit, rather than either (a) giving the correct amount of change, (b) rounding the purchase price down to benefit the consumer, or (c) giving the consumer credit toward a future purchase to offset the loss to the consumer.

17. The actual price charged by Chipotle for food purchased is different, and more, than the advertised price of the food.

18. Moreover, the receipts provided to Plaintiffs McMahon and Rice deceptively indicated that the Plaintiffs had, in fact, received change of more than they were actually given, thus covering up evidence of Chipotle's improper actions.

19. This policy, practice, or acquiescence in the improper conduct known to Chipotle, and refusal of Defendant Chipotle to provide either change or a credit to consumers, is believed and therefore averred to have resulted in the ascertainable loss of hundreds of thousands of dollars, if not millions of dollars, to the detriment of Pennsylvania consumers and to the benefit of Defendant Chipotle.

## **CLAIMS**

## **COUNT I**

### **Misappropriation and Conversion**

20. Paragraphs 1 through 19 above are incorporated herein by reference as if fully set forth.

21. Defendant Chipotle, by its actions as set forth above, has misappropriated and converted funds (and continues to convert funds) belonging to Pennsylvania consumers in an amount yet to be determined, but believed to have occurred in thousands of transactions, and to exceed – at a minimum, several hundred thousand dollars.

22. It is believed and therefore averred that Defendant Chipotle knowingly and deliberately imposed the above-referenced policy or practice, and subsequently acquiesced in a known practice of short-changing and penalizing consumers who needed or wanted to purchase Defendant's goods and services with cash, in deliberate

and reckless disregard of the rights of consumers, and fully aware that Defendant would be receiving money to which it was not entitled.

23. In any event, and regardless of motive, conversion is a tort of strict liability in Pennsylvania.

WHEREFORE, Plaintiffs Bridget McMahon and James Rice, on behalf of themselves and all others similarly situated, respectfully demand judgment in favor of the Class (as defined below) and against Defendant Chipotle, in an amount yet to be determined, but (pending discovery of information in Defendant's exclusive possession), exceeding the amount in controversy threshold of this Court, plus interest, costs, punitive damages, and such other relief as this Court deems appropriate.

## COUNT II

### Unfair Trade Practices

24. Paragraphs 1 through 23 above are incorporated herein by reference as if fully set forth.

25. Defendant Chipotle does not franchise its stores. Therefore, all of its stores, including those in Pennsylvania, are owned and operated directly by the Defendant itself. As such, any improper conduct, including conduct or practice which is directed, authorized, known to and/or acquiesced in by Defendant, is attributable to the Defendant.

26. Defendant Chipotle's actions and policy or practices violate Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq.*, ("UTPCPL"), in at least the following ways:

    (a)    By advertising the price of goods with the intent not to sell them as advertised, in violation of 73 P.S. § 201-2(4)(ix);

(b) By deceptively and confusingly indicating on the customer's receipt, provided only after the cash is tendered by the consumer and accepted by the Defendant, that the consumer is receiving change which she or he did not, in fact, receive, thereby eliminating the ability of the consumer to secure proof of Defendant's conversion and misappropriation, in violation of 73 P.S. § 203-2(4)(xxi);

(c) By engaging in fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding when a consumer tenders cash at the end of the transaction, only to be told that the effective price of the product he or she must pay is higher than what was originally ordered, in violation of 73 P.S. § 203-2(4)(xxi);

(d) By fomenting and perpetuating confusion and misunderstanding, to the extent Chipotle selectively enforces its directives and/or ignores or acquiesces in violation of these directives and/or provides inconsistent directives to its wholly-owned stores which, in turn, result in ascertainable losses to consumers; and

(e) By converting and misappropriating the property (cash) of the consumer (who does not possess or chooses not to use a credit card) in violation of Pennsylvania law and in a manner that discriminates against cash consumers.

27. The UTPCPL mandates that, for each violation suffered by a consumer Class Member, Defendant Chipotle is liable for a minimum damage of the greater of actual loss or $100.00.  73 P.S. § 201-9.2(a).

28. In addition, violations of the UTPCPL mandate recovery of counsel fees and expenses from Defendant Chipotle.  73 P.S. § 201-9.2(a).

29. The Court may, and should, also award treble damages for Defendant Chipotle's knowing, outrageous, and reckless conduct. *Id.*

WHEREFORE, Plaintiffs Bridget McMahon and James Rice, on behalf of themselves and all others similarly situated, respectfully demand judgment in favor of the Class (as defined below) and against Defendant Chipotle, in an amount yet to be

determined (pending discovery in Defendant's exclusive possession), but exceeding $5,000,000, to be trebled, plus attorney's fees, litigation expenses, costs, interest, and such other relief as this Court deems appropriate.

## COUNT III

### Breach of Contract/Unjust Enrichment

30. Paragraphs 1 through 29 above are incorporated herein by reference as though fully set forth.

31. Defendant Chipotle, by its actions, policies, or practices, as set forth above, breaches its agreement with its customers by collecting more for goods and services than the customers agreed to pay when ordering said goods and services.

32. Alternatively, Defendant Chipotle, by its actions, policies, or practices, as set forth above, improperly benefits and is unjustly enriched to the detriment of Class Members, who are effectively penalized and forced to pay more than the advertised purchase price for goods and services than non-cash paying customers.

WHEREFORE, Plaintiffs Bridget McMahon and James Rice, on behalf of themselves and all others similarly situated, respectfully demand judgment in favor of the Class (as defined below) and against Defendant Chipotle, in an amount yet to be determined, but (pending discovery of information in Defendant's exclusive possession), exceeding the amount in controversy threshold of this Court, plus interest, costs, punitive damages, and such other relief as this Court deems appropriate.

## COUNT IV

### Injunction

33. Paragraphs 1 through 32 above are incorporated herein by reference as if fully set forth.

34. Defendant Chipotle's outrageous and improper policies and practices, and its conduct towards consumers, should be immediately and permanently restrained.

35. Specifically, Defendant Chipotle should be enjoined from selling its goods or services to consumers who do not use or have access to a credit card at a higher purchase price than consumers who have or use a credit card for the same purchase.

36. Defendant Chipotle can and should be required, prospectively, to provide appropriate credits to consumers on future purchases – which can easily be accomplished by updating its Point of Sale system to generate credits and receipts that can be used by those consumers on future visits.

37. In addition, Defendant Chipotle can and should be required, prospectively, to conspicuously advise consumers who choose or need to use cash that they will receive a credit in lieu of change, based on Chipotle's "company policy."

WHEREFORE, Plaintiffs Bridget McMahon and James Rice, on behalf of themselves and all others similarly situated, respectfully move this Court to enjoin the conduct of Defendant Chipotle in at least the following ways:

    (a) By enjoining Chipotle from refusing to provide correct change to customers who tender cash as a form of payment for Chipotle's goods or services;

    (b) By affirmatively requiring Chipotle, if it fails to provide correct change (or in lieu of providing correct change), to give the customers who tender cash as a form of payment a credit toward future purchases;

    (c) By enjoining Chipotle from selling goods or services to consumers who cannot or do not use a credit card at a higher effective purchase price than the same purchase made by those who have and use a credit card; and

(d)  By awarding such other relief as this Court deems appropriate to prevent further misappropriation of consumer assets by Chipotle.

## CLASS ACTION ALLEGATIONS

38. Paragraphs 1 through 37 above are incorporated herein by reference as if fully set forth.

39. The proposed Class consists of all individuals who, on or after January 1, 2020, purchased any item(s) from a Chipotle fast casual restaurant in Pennsylvania using cash, and were given change of less than the difference between the amount of cash tendered and the purchase price of the item(s).

40. While the exact number of Class Members is not yet known, subject to discovery, it is believed and therefore averred that the Class numbers in the thousands, and perhaps in the hundreds of thousands. Joinder of such a large number of individual plaintiffs in this action is impracticable.

41. While the Class is numerous, it is believed that Defendant Chipotle maintains extensive records relating to the amount of overcharges converted, as described in this Complaint.

42. The questions of law and fact relating to Chipotle's conduct, and the inequity and impropriety of that conduct, as more fully set forth above, are questions which are common, generally apply to, and affect the entire Class.

43. These common questions predominate over and are a necessary precedent to any questions affecting only individual Class Members.

44. Further, this Class Action is superior to other methods for fairly and efficiently adjudicating the controversy. Among other reasons:

    (a)    The amounts involved for individual class members, in view of potential expenses of litigation and the complexities thereof, are insufficient to support thousands of individual actions or the legal expenses inherent in those actions;

    (b)    Given the amounts involved, and the prospect of litigating alone against a multi-billion dollar corporation, individual class members would have little or no interest in individually controlling the prosecution of separate actions, thus making it more likely that Chipotle can continue its improper conduct with impurity;

    (c)    It is desirable, and in keeping with the strong public policy of leveling the playing field by providing consumer redress against large corporations through class actions, to concentrate the litigation of claims in this forum; and

    (d)    This Court is certainly capable of managing a class action without undue difficulty.

45. The claims of the named Class Representatives are typical of the claims of the Class.

46. Individual actions by members of the Class would, as a practical matter, be dispositive of the interest of members who are not parties, and/or may substantially impede his or her ability to protect his or her interest. It would also establish incompatible standards of conduct for Defendant.

47. Chipotle, as more fully set above, has acted and/or refused to act on grounds generally applicable to the Class by engaging in conduct which is contrary to Pennsylvania law, which constitutes unfair and/or deceptive conduct under Pennsylvania law, and unjustly enriches Chipotle.

48. This Class Action can thus be maintained pursuant to F.R.Civ.P. 23(b)(1), (2), and (3).

49. It is believed and therefore averred that lead counsel for the Class Representatives will diligently and adequately represent the interests of the Class. Said

counsel is a shareholder in a well-respected law firm consisting of 30 attorneys with sufficient support staff to manage an action of this size. Counsel has successfully litigated and managed several class actions in the past.

50. The Class Representatives, after reasonable inquiry, have determined that they have no conflict of interest in the maintenance of the class action, and have or can acquire adequate financial resources to ensure that the interests of the Class will not be harmed, consistent with the Pennsylvania Rules of Professional Conduct.

Respectfully submitted,

ROTHMAN GORDON, P.C.

By: /s/ Frank G. Salpietro
    Frank G. Salpietro, Esquire
    Pa. I.D. No. 47154

Rothman Gordon, P.C.
Firm I.D. 010
310 Grant Street – Third Floor
Pittsburgh, PA  15219
(412) 338-1185 (telephone)
(412) 246-1785 (facsimile)
fgsalpietro@rothmangordon.com

Attorneys for Plaintiffs Bridget McMahon and James Rice, on behalf of themselves and all others similarly situated