IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIDGET MCMAHON and JAMES RICE, *on behalf of themselves and all others similarly situated*,<br><br>*Plaintiffs*,<br><br>v.<br><br>CHIPOTLE MEXICAN GRILL, INC. trading and doing business as CHIPOTLE,<br><br>*Defendant*. | Civil Action No. 2:20-cv-1448<br><br>Hon. William S. Stickman IV |

### **MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

This matter comes before the Court as part of a putative class action brought against Defendant Chipotle Mexican Grill, Inc., t/d/b/a Chipotle ("Chipotle") for allegedly providing inadequate change to customers. (*See* ECF Nos. 1-1, 102). Chipotle claims that the lawsuit is frivolous and was initiated through the unethical solicitation of clients by Plaintiffs' counsel, Frank Salpietro ("Salpietro"). On September 19, 2022, Chipotle filed a Motion for Sanctions against Salpietro pursuant to Federal Rule of Civil Procedure 11 ("Rule 11"), 28 U.S.C. § 1927, and the Court's inherent authority to supervise and monitor the conduct of attorneys appearing before it. (ECF No. 157). After carefully reviewing the relevant facts and considering the parties' arguments, the Court is compelled to deny Chipotle's Motion for Sanctions for the reasons set forth below.

I.   FACTUAL AND PROCEDURAL BACKGROUND

On August 20, 2020, Plaintiffs filed a Class Action Complaint ("Complaint") against Chipotle in the Court of Common Pleas of Allegheny County, alleging that Chipotle misappropriated consumer funds and engaged in unfair trade practices by providing inadequate change to customers. (ECF No. 1-1). On September 25, 2020, Chipotle removed the action to this court. (ECF No. 1). Plaintiffs Megan Fox ("Fox") and Bridget McMahon ("McMahon") filed a Motion to Remand to State Court, which the Court denied. (ECF Nos. 3, 37). After initial discovery, the Court granted Plaintiffs' Motion for Leave to Withdraw Class Representative, Amend the Class Action Complaint, and Substitute/Allow Intervention of New Class Representative. (ECF No. 100).

Plaintiffs filed an Amended Class Action Complaint ("Amended Complaint") on January 26, 2022, withdrawing Fox as class representative and substituting James Rice ("Rice") as a new class representative. (ECF No. 102). Rice testified that, on October 10, 2020, he was shortchanged by Chipotle at its store in Warrington Township, Bucks County, Pennsylvania. (ECF No. 157-2, p. 5). Without any prior communication with Salpietro or the class representatives, Rice contacted Salpietro about the alleged shortchanging. (*See id.*). In the Amended Complaint, Plaintiffs allege that McMahon and Rice both received inadequate change after making cash payments at Chipotle restaurants and that Chipotle "has instituted a company policy and/or practice, or has otherwise acquiesced in a practice, whereby its employees do not return the full amount of change due to a consumer, but instead round down the change due, return the lower amount to the consumer, and pocket the difference." (ECF No. 102, ¶ 4). The Amended Complaint alleges that Chipotle violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Cons. Stat. § 201-1 (2020), and converted funds belonging to class members by shortchanging

customers who made cash payments. (*See* ECF No. 102, ¶¶ 21, 26). Class members include "all individuals who, on or after January 1, 2020, purchased any item(s) from a Chipotle fast casual restaurant in Pennsylvania using cash, and were given change of less than the difference between the amount of cash tendered and the purchase price of the item(s)." (*Id.* ¶ 39).

Initial discovery revealed messages from Salpietro's daughter, Isabella Salpietro ("Isabella"), to a group chat which included Fox and McMahon. (*See* ECF Nos. 157-6, 157-8). The messages from Isabella relayed the following from her father, Salpietro: "In the next couple of days I need you and maybe a friend to do an experiment: Go to Chipotle with a $20 bill. Order a burrito that will cost around $8.24. See if they only give you $11 back instead of the correct change. I'm testing a class action." (ECF No. 157-6, p. 1). Isabella sent a series of subsequent messages saying, in part: "Holy frank needs a representative[.] Who's gonna do it[.] Not allowed cuz I'm his daughter[.]" (*Id.*). Fox went to Chipotle on August 12, 2020, but mistakenly paid with a debit card. (ECF No. 157-4, p. 13). Isabella sent messages encouraging Fox to return the next day, saying "we will pay you back if you go tomorrow." (ECF No. 157-6, p. 2). Fox did go to Chipotle the following day and did not receive adequate change for her cash purchase. (ECF No. 1-1, ¶ 12). McMahon went to a different Chipotle to make a cash purchase on August 18, 2020. (ECF No. 102, ¶ 5). At her deposition, McMahon denied talking to Salpietro prior to her August 18, 2020 purchase, but acknowledged that she had exchanged messages with Fox and Isabella. (ECF No. 157-3, pp. 13-14). After her purchase on August 18, 2020, McMahon sent the following messages to a group chat: "Wait fox and I actually might get a lot of money if we win[.] Frank billionaire[.] Iz if we win you should tell Frank he has to pay for your grad school cause you supplied him with representatives[.]" (ECF No. 157-8, p. 3).

3

Based on the deposition testimony and messages outlined above, Chipotle claims that Salpietro "manufactured this lawsuit by asking his daughter and her friends to purchase food from Chipotle and intentionally tender cash in excess of the exact amount charged[.]" (ECF No. 157, pp. 1-2). According to Salpietro, the lawsuit originated based on the experiences of the managing shareholder of Salpietro's law firm, William E. Lestitian ("Lestitian"), at multiple Chipotle locations in July 2020. (*See* ECF No. 167, p. 8). On September 19, 2022, Chipotle filed a Motion for Sanctions, alleging "unethical solicitation and gross abuse of the class action device." (ECF No. 157, p. 1). Chipotle seeks sanctions against Salpietro under Rule 11, 28 U.S.C. § 1927, and the inherent power of the Court.

## II.   LEGAL STANDARDS

### A.   Rule 11

Rule 11 sets forth the standard for an attorney or unrepresented party who is "presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it[.]" Fed. R. Civ. P. 11(b). Under Rule 11, when an attorney makes a representation to the court, he or she certifies that it is "not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation" and that the representation being made has a reasonable legal and factual basis. *Id.* "The rule imposes on counsel a duty to look before leaping and may be seen as a litigation version of the familiar railroad crossing admonition to 'stop, look, and listen.'" *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 157 (3d Cir. 1986). The purpose of Rule 11 is to discourage the filing of frivolous lawsuits and "to prevent abuse caused not only by bad faith but by negligence and, to some extent, by professional incompetence." *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482 (3d Cir. 1987). When such abuse occurs, Rule 11 also serves the purpose of holding the violating party accountable.

*Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 94 (3d Cir. 1988) ("We have explained that the intended goal of Rule 11 is accountability."). Rule 11 sanctions, however, are "intended only for exceptional circumstances." *Teamsters Loc. Union No. 430 v. Cement Exp., Inc.*, 841 F.2d 66, 68 (3d Cir. 1988).

In this Circuit, "[t]he legal standard to be applied when evaluating conduct allegedly violative of Rule 11 is reasonableness under the circumstances, with reasonableness defined as an 'objective knowledge or belief at the time of the filing of a challenged paper' that the claim was well-grounded in law and fact." *Ford Motor Co. v. Summit Motor Prod., Inc.*, 930 F.2d 277, 289 (3d Cir. 1991) (quoting *Jones v. Pittsburgh National Corp.*, 899 F.2d 1350, 1359 (3d Cir. 1990)) (internal citations omitted). The United States Court of Appeals for the Third Circuit does not "impose a continuing duty on counsel to make amendments based on knowledge ascertained after filing[.]" *Gaiardo*, 835 F.2d at 484.

"If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). Rule 11 does not limit the type of sanctions which may be imposed, leaving to a court "the necessary flexibility to deal appropriately with violations of the rule[]" and the "discretion to tailor sanctions to the particular facts of the case[.]" Fed. R. Civ. P. 11 advisory committee note to 1983 amendment. Although courts have broad discretion when choosing sanctions, "[t]he basic principle governing the choice of sanctions is that the least severe sanctions adequate to serve the purpose should be imposed." *Doering v. Union Cnty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988). Courts have exercised their discretion to impose a wide range of sanctions. *See Gaiardo.*, 835 F.2d at 482 ("Possible sanctions include requiring the offending client, lawyer,

5

or both, to pay all or part of the adversary's counsel fees incurred as a result of the violation. . . . In addition to financial penalties courts may sanction by warning, oral reprimands in open court, or written admonition."). "Although dismissal of a case is an additional alternative, judges are reluctant to jeopardize a client's case because of the lawyer's indiscretion." *Id.*

### B.     28 U.S.C. § 1927

A court may also impose sanctions under 28 U.S.C. § 1927. "[T]he principal purpose of imposing sanctions under 28 U.S.C. § 1927 is the deterrence of intentional and unnecessary delay in the proceedings." *Zuk v. Eastern Pennsylvania Psychiatric Institute*, 103 F.3d 294, 297 (3d Cir. 1996) (citation and internal quotations omitted). Section 1927 states that:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. As the statutory text indicates, to impose sanctions under Section 1927, a court must find that "an attorney has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct." *In re Prudential Ins. Co. America Sales Practice Litig.*, 278 F.3d 175, 188 (3d Cir. 2002). Unlike Rule 11, "before a court can order the imposition of attorneys' fees under § 1927, it must find willful bad faith on the part of the offending attorney." *Williams v. Giant Eagle Markets, Inc.*, 883 F.2d 1184, 1191 (3d Cir. 1989). Bad faith can be inferred if the court finds that counsel knew or should have known that the claims being advanced were meritless, and that they were being advanced for an improper purpose. *In re Prudential*, 278 F.3d at 188.

Section 1927 "authorizes only the imposition of costs and expenses that result from the particular misconduct the court sanctions [and] limits these costs and expenses to those that could

be taxed to a losing party under 28 U.S.C.A § 1920[.]" *Martin v. Brown*, 63 F.3d 1252, 1265 (3d Cir. 1995) (internal citations omitted). However, district courts in this circuit have indicated a willingness to "award fees and costs for the entire course of proceedings when it appears that the entire action was unwarranted." *Woods v. Adams Run Assocs., et al.*, 1997 WL 256966, at *4 (E.D.Pa. May 13, 1997).

### C. Inherent Power of the Court

A court also has the inherent power to impose sanctions against attorneys appearing before it "for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991). "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Id.* at 43 (quoting *Anderson v. Dunn*, 19 U.S. 204, 227 (1821)). A court's inherent power to impose sanctions is not replaced or diminished by the existence of Rule 11 or 28 U.S.C. § 1927. *Id.* at 46. "However, '[b]ecause of their very potency, inherent powers must be exercised with restraint and caution.'" *In re Prudential*, 278 F.3d at 189 (quoting *Chambers*, 501 U.S. at 44). "Therefore, '[g]enerally, a court's inherent power should be reserved for those cases in which the conduct of a party or an attorney is egregious and no other basis for sanctions exists.'" *Id.* (quoting *Martin v. Brown*, 63 F.3d at 1265). When conduct reaches this level, a court has the discretion "to fashion an appropriate sanction[.]" *Chambers,* 501 U.S. at 44.

### III. ANALYSIS

### A. Rule 11 Applies to Documents First Filed in State Court

Before determining whether Salpietro's conduct warrants the imposition of sanctions, the Court must first decide whether Rule 11 applies in this context, where Plaintiffs first filed their Complaint in state court. Under Rule 11, "[b]y presenting to the court a pleading, written motion,

7

or other paper–whether by signing, filing, submitting, or later advocating it–an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances[]" it is factually and legally reasonable and is not being presented for an improper purpose. Fed. R. Civ. P. 11(b). In other words, a court can only impose Rule 11 sanctions based on papers or arguments "presented" to that federal court. Thus, a federal court cannot impose sanctions under Rule 11 based on conduct that took place solely in state court. *See e.g., Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 245 (5th Cir. 1998) ("There is no indication, in the text of the rule, that it applies to filings in any court other than a federal district court. Thus, it cannot apply to the petition [Plaintiff] filed in state court that thereafter was removed."). Based on this general rule, Salpietro argues that Rule 11 is not applicable to the conduct at issue because it took place prior to Plaintiffs filing their Complaint in state court.

>However, after Rule 11 was revised in 1993, the Advisory Committee explained that:
>
>[I]f after a notice of removal is filed, a party urges in federal court the allegations of a pleading filed in state court (whether as claims, defenses, or in disputes regarding removal or remand), it would be viewed as "presenting"—and hence certifying to the district court under Rule 11—those allegations.

Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment. Importantly, the Advisory Committee specifically stated that allegations presented as part of a dispute regarding remand are subject to Rule 11 sanctions. As Chipotle points out, before filing the Amended Complaint, Salpietro presented the allegations of the state court pleading in subsequent filings in federal court, including a Motion to Remand. (ECF No. 3). Additionally, although Plaintiffs' Amended Complaint altered the allegations against Chipotle, it is rooted in the same conduct as the initial Complaint filed in state court. Because Salpietro continued to advocate for the allegations contained in the state court filing after it was removed to federal court and because the allegations in the Amended Complaint are based on the same challenged conduct, the Court holds that

8

Salpietro "certified" that both filings complied with Rule 11. Thus, the Court may impose Rule 11 sanctions against Salpietro for any violative conduct relating to the Amended Complaint or the Complaint initially filed in state court. The Court also retains the authority to impose sanctions pursuant to 28 U.S.C. § 1927 and its inherent power.

### B. Whether Sanctions Should Be Imposed Against Salpietro

Having determined that Rule 11 applies, the Court next must decide whether Salpietro should be sanctioned under Rule 11, 28 U.S.C. § 1927, or the inherent power of the Court. Chipotle argues that Salpietro should be sanctioned because (1) the lawsuit was initiated for an improper purpose and (2) because the claims and legal contentions are frivolous. Both arguments, in large part, are rooted in Chipotle's assertion that Salpietro engaged in the unethical solicitation of clients to bring claims that would otherwise never have been brought. In support of this assertion, Chipotle points to Pennsylvania Rule of Professional Conduct 7.3(a) regarding the solicitation of clients and to the Supreme Court of Pennsylvania's recognition of the problems created by solicitation. *See Lloyd v. Fishinger*, 605 A.2d 1193, 1196 (Pa. 1992) ("In our serious task of overseeing ethical conduct within the bar, this Court is not unaware of the evils involved in direct solicitation of clients by attorneys."). Violation of the Pennsylvania Rules of Professional Conduct is not, on its own, justification for imposing sanctions under Rule 11. However, Chipotle argues that Salpietro's unethical solicitation is an abuse of the class action device, which "constitutes litigation for an improper purpose." (ECF No. 157, p. 9). According to Chipotle, Salpietro's unethical solicitation also fatally undermines every substantive claim being pursued and renders the claims and legal contentions frivolous. (*Id.* at 13).

Under Rule 11, an attorney certifies that the legal contentions being presented to the Court "are warranted by existing law or by a nonfrivolous argument for extending, modifying, or

reversing existing law or for establishing new law[.]" Fed. R. Civ. P. 11(b)(2). The Court must apply an objective test of reasonableness under the circumstances. *Ford Motor Co.,* 930 F.2d at 289. In other words, the Court must determine whether Salpietro had "objective knowledge or belief at the time of the filing of a challenged paper that the claim was well-grounded in law and fact." *Id.* (internal quotations omitted). Sanctions for frivolous claims are generally imposed "only in the exceptional circumstance where a claim or motion is patently unmeritorious or frivolous." *Doering,* 857 F.2d at 194 (internal citations omitted).

Chipotle argues that Salpietro's unethical solicitation shows that McMahon and Fox had knowledge of the coin shortage, that they intended to complete a transaction without receiving proper change, and that they consented to not receiving adequate change. (ECF No. 178, p. 5). According to Chipotle, the fact that McMahon and Fox had knowledge of Chipotle's coin shortage and consented to not receiving adequate change makes it impossible for Plaintiffs to establish the necessary elements of their claims for Conversion and Misappropriation (Count I); Unfair Trade Practices (Count II); and Breach of Contract and Unjust Enrichment (Count III). Chipotle further argues that, because Salpietro knew this at the time of filing the original Complaint and the Amended Complaint, he could not have reasonably believed that the claims were well-grounded in law.

As Salpietro points out, however, McMahon knew that shortchanging had occurred at other Chipotle restaurants, but she did not know whether it would occur at the Allison Park store where she made her purchase. (ECF No. 167, p. 18). Salpietro claims that he asked McMahon to make her purchase as part of an effort to test the pervasiveness of the alleged shortchanging conduct that was first brought to Salpietro's attention by Lestitian. (*See id.* at 8). Additionally, Salpietro points out that Chipotle does not claim that Rice had any prior knowledge of Chipotle's alleged

shortchanging or that he consented to receiving inadequate change. (*Id.* at 15). Given the ambiguity around what McMahon knew, the existence of Rice as a Plaintiff without prior knowledge of the coin shortage, and Rule 11's high bar for frivolousness, the Court holds that Salpietro's alleged unethical solicitation does not render the merits of Plaintiffs' claims "patently unmeritorious or frivolous."

Chipotle also argues that Salpietro's claim—that Chipotle's alleged shortchanging is part of a "corporate policy"—has no factual or evidentiary support. Rule 11 requires a reasonable belief that factual contentions being presented to a court "have evidentiary support, or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]" Fed. R. Civ. P. 11(b)(3). To support his allegation that Chipotle's shortchanging was part of a corporate policy, Salpietro relies on Lestitian's testimony that "he was told by a corporate employee of Chipotle Cochran Road that it was 'company policy' to round up a cash-paying customer's bill." (ECF No. 167, pp. 19-20). Salpietro also relies on video footage produced during discovery, which, according to the Affidavit of Mathew E. Pohl, revealed additional instances of Chipotle customers being shortchanged at various locations. (*See* ECF No. 167-8). Given his position as a shareholder of Salpietro's law firm, Chipotle questions the reliability of Lestitian's testimony and claims that Chipotle demonstrated early in discovery that no corporate policy of shortchanging exists. (*See* ECF No. 157, pp. 16-17). For purposes of deciding this motion, however, the Court must, to the extent possible, refrain from evaluating the reliability of testimony or from settling factual disputes. The Court considers the sufficiency of the factual allegations only to determine whether, at the time of filing, Salpietro could have reasonably believed that the allegations had factual support. Based on the testimony of Lestitian and the existence of evidence showing that the alleged conduct took place at several Chipotle

locations, the Court holds that Salpietro has established a reasonable belief that the allegations regarding a corporate policy of shortchanging have evidentiary support.

Regardless of the merits of Plaintiffs' claims, Chipotle argues that Salpietro—by unethically soliciting clients—filed the original Complaint and Amended Complaint against Chipotle for an "improper purpose." Rule 11 provides three examples of "improper purposes"—harassment, unnecessary delay, and unnecessarily increasing the cost of litigation. Fed. R. Civ. P. 11(b)(1). This list, however, is not exhaustive and Rule 11 sanctions can be imposed if the filing of a lawsuit "constitute[s] abusive litigation or misuse of the court's process." *Teamsters Loc. Union No. 430,* 841 F.2d at 68. Chipotle argues that Salpietro manufactured this lawsuit through the unethical solicitation of clients, and, as a result, has misused the Court's process and abused the class action device. (*See* ECF No. 157, p. 1). This abuse of the Court's process, according to Chipotle, is sufficient to establish that this litigation was brought for an "improper purpose."

Salpietro responds by pointing out that the lawsuit originated not with McMahon or Fox being shortchanged, but with Lestitian being shortchanged and bringing the situation to his attention. According to Salpietro, he asked McMahon and Fox to make a cash purchase at Chipotle not to initiate the lawsuit, but to test the pervasiveness of Chipotle's conduct. (*See* ECF No. 167, p. 8). This, Salpietro argues, was consistent with his duty of reasonable inquiry. Chipotle questions the reliability of Lestitian's testimony and notes the peculiarity of his participation in this suit as both a lawyer and a fact witness. (ECF No. 178, p. 7). Chipotle also points to several opinions expressing concern over the dangers of unethical solicitation in the class action context. *See, e.g., Snelling v. ATC Healthcare Servs., Inc.,* No. 2:11-CV-00983, 2013 WL 1386026 (S.D. Ohio Apr. 4, 2013); *Stavrides v. Mellon Nat. Bank & Tr. Co.,* 60 F.R.D. 634 (W.D. Pa. 1973);

*Carlisle v. LTV Electrosystems, Inc.*, 54 F.R.D. 237 (N.D. Tex. 1972); *Buford v. Am. Fin. Co.*, 333 F. Supp. 1243, 1251 (N.D. Ga. 1971); *Lloyd v. Fishineer*, 605 A.2d 1193 (Pa. 1992).

The Court shares Chipotle's concern about Salpietro's conduct at the origins of this litigation but does not view Rule 11 as the proper vehicle for addressing the unethical solicitation alleged here. Again, sanctions are reserved "only for exceptional circumstances." *Teamsters Loc. Union No. 430*, 841 F.2d at 68. A finding that Salpietro abused the Court's process by initiating this lawsuit would severely undermine—if not doom—Plaintiffs' case. Mindful of these concerns and of due process considerations, the Court is "reluctant to jeopardize a client's case because of the lawyer's indiscretion." *Gaiardo*, 835 F.2d at 482. Given this, Salpietro's assertion that the lawsuit was initiated based on Lestitian's experiences is enough to establish that he reasonably believed that the original Complaint and the Amended Complaint were not filed for an improper purpose. Because Salpietro has satisfied Rule 11's standard of reasonableness under the circumstances, the Court also declines to impose sanctions under 28 U.S.C. § 1927, which requires a finding that an attorney has multiplied proceedings in an unreasonable manner as well as a finding of bad faith. *In re Prudential*, 278 F.3d at 188. For the same reasons, the Court also declines to exercise its inherent power—which is reserved only for cases where the conduct of "an attorney is egregious and no other basis for sanctions exists"— to impose sanctions on Salpietro. *Martin v. Brown*, 63 F.3d at 1265.

Although the high bar to impose sanctions has not been met, the Court is very concerned about Salpietro's alleged solicitation and about the involvement of the CEO and managing shareholder of Salpietro's law firm as a key fact witness and putative class member. The Court echoes the sentiment expressed in *Bodner v. Oreck Direct, LLC*, which was cited by Chipotle: "[T]he conduct in this action does not look good, does not sound good, and does not smell good.

13

In fact, it reeks." *Bodner v. Oreck Direct, LLC*, 2007 WL 1223777, at *3 (N.D. Cal. Apr. 25, 2007). That sentiment, however, was expressed in the context of deciding a motion for class certification. In fact, the relevant cases cited by Chipotle—that is, cases where the court expressed concern over unethical solicitation of class action clients—were all deciding issues related to the legitimacy of the class, not whether to impose sanctions.[1]

Here too, the alleged unethical solicitation of clients by Salpietro is more appropriately considered at the class certification stage. The Court can properly consider unethical conduct of an attorney when deciding whether to grant class action status. *See Stavrides*, 60 F.R.D. at 636 ("[U]nethical conduct by plaintiffs' counsel may result in a denial of the class action motion."). Given its concern over Salpietro's conduct, the Court "intend[s] to very vigorously assert [its] broad administrative, as well as adjudicative power to assure [itself] that there is no ethical misconduct involved here before granting class status." *Id.* at 637, n.6 (internal quotations omitted). Although the Court will deny Chipotle's Motion for Sanctions, if the alleged unethical conduct is raised at a future stage, the Court will consider it at that time.

---

[1] *See, e.g., P.D.Q., Inc. of Miami v. Nissan Motor Corp. in U.S.A.*, 61 F.R.D. 372 (S.D. Fla. 1973), aff'd sub nom. *In re Nissan Antitrust Litig.*, 577 F.2d 910 (5th Cir. 1978) (discussing ethical problems in the context of deciding plaintiffs' request that the action be allowed to proceed as a class action); *Stavrides, v. Mellon Nat. Bank & Tr. Co.*, 60 F.R.D. 634 (W.D. Pa. 1973) (granting defendants' motion to compel answers related to plaintiff's counsel's conduct because such conduct relevance to deciding the legitimacy of the class action); *Cotchett v. Avis Rent A Car Sys., Inc.*, 56 F.R.D. 549 (S.D.NY. 1972) (denying a motion for determination that his suit could be maintained as a class action); *Carlisle v. LTV Electrosystems, Inc.*, 54 F.R.D. 237 (N.D. Tex. 1972) (deciding a motion to confirm class action); *Buford v. Am. Fin. Co.*, 333 F. Supp. 1243 (N.D. Ga. 1971) (granting motion to terminate cases as class actions); *Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 16 Fed. R. Serv. 2d 1021 (N.D. Tex. 1972), aff'd, 482 F.2d 880 (5th Cir. 1973) (denying motion to determine existence of class action); *Meachum v. Outdoor World Corp.*, 171 Misc. 2d 354, 369, 654 N.Y.S.2d 240 (Sup. Ct. 1996) (denying class certification).

## IV.  CONCLUSION

For the reasons set forth above, Chipotle's Motion for Sanctions (ECF No. 157) will be denied.  An Order of Court will follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

__11-14-22__
Dated