IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| BRIDGET MCMAHON and JAMES RICE, *on behalf of themselves and all others similarly situated*,<br><br>        *Plaintiffs*,<br><br>  v.<br><br>CHIPOTLE MEXICAN GRILL, INC. trading and doing business as CHIPOTLE,<br><br>        *Defendant*. | Civil Action No. 2:20-cv-1448<br><br>Hon. William S. Stickman IV |

## **MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

  Plaintiffs James Rice ("Rice") and Bridget McMahon ("McMahon") filed a putative class action on behalf of themselves and all others similarly situated alleging that Defendant Chipotle Mexican Grill, Inc., t/d/b/a Chipotle ("Chipotle") provided inadequate change to customers. (ECF No. 102). Three motions are presently before the Court: Chipotle's Motion to Exclude Opinions and Testimony of Matthew E. Pohl (ECF No. 195); Plaintiffs' Motion for Class Certification (ECF No. 188); and Plaintiffs' Motion to Appoint Rothman Gordon, P.C., as Class Counsel (ECF No. 187). For the reasons set forth below, Chipotle's Motion to Exclude Opinions and Testimony of Mathew E. Pohl (ECF No. 195) will be denied; Plaintiffs' Motion for Class Certification (ECF No. 188) will be denied; and Plaintiffs' Motion to Appoint Rothman Gordon, P.C., as Class Counsel (ECF No. 187) will be denied as moot.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On August 20, 2020, Plaintiffs filed a Class Action Complaint against Chipotle in the Court of Common Pleas of Allegheny County alleging that Chipotle misappropriated consumer funds and engaged in unfair trade practices by providing inadequate change to customers.  (ECF No. 1-1).  On September 25, 2020, Chipotle removed the action to this court.  (ECF No. 1).  Plaintiffs Megan Fox ("Fox") and McMahon filed a Motion for Remand, which the Court denied.  (ECF Nos. 3, 37).  After initial discovery, the Court granted Plaintiffs' Motion for Leave to Withdraw Class Representative, Amend Class Action Complaint, and Substitute/Allow Intervention of New Class Representative.  (ECF No. 100).

Plaintiffs filed an Amended Class Action Complaint ("Amended Complaint") on January 26, 2022, withdrawing Fox as the class representative and substituting Rice as the new class representative.  (ECF No. 102).  Rice testified that, on October 10, 2020, he was shortchanged by Chipotle at its store in Warrington Township, Bucks County, Pennsylvania.  (ECF No. 157-2, p. 5).  Without any prior communication with Plaintiffs' counsel or the class representatives, Rice contacted Plaintiffs' counsel about the alleged shortchanging.  (*See id.*).  Based on deposition testimony and messages revealed during discovery, Chipotle filed a Motion for Sanctions alleging that Plaintiffs' counsel, Frank Salpietro ("Salpietro"), initiated this lawsuit through "unethical solicitation and gross abuse of the class action device."  (ECF No. 157, p. 1).  The Court denied Chipotle's Motion for Sanctions, but noted that, "if the alleged unethical conduct is raised at a future stage, the Court will consider it at that time."  (ECF No. 181, p. 14).

In the Amended Complaint, Plaintiffs allege that McMahon and Rice both received inadequate change after making cash payments at Chipotle restaurants and that Chipotle "has instituted a company policy and/or practice, or has otherwise acquiesced in a practice, whereby its

2

employees do not return the full amount of change due to a consumer, but instead round down the change due, return the lower amount to the consumer, and pocket the difference." (ECF No. 102, ¶ 4). Based on this alleged shortchanging, Plaintiffs claim that Chipotle breached its agreement with customers, violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Cons. Stat. § 201-1 (2020), and converted funds belonging to class members. (*See* ECF No. 102, ¶¶ 21, 26). Class members include "all individuals who, on or after January 1, 2020, purchased any item(s) from a Chipotle fast casual restaurant in Pennsylvania using cash, and were given change of less than the difference between the amount of cash tendered and the purchase price of the item(s)." (*Id.* ¶ 39).

## II.   ANALYSIS

In support of its Motion for Class Certification (ECF No. 188), Plaintiffs rely on the expert testimony and report of data analyst Matthew E. Pohl ("Pohl"). As Chipotle points out in its motion to exclude (ECF No. 195), "a plaintiff cannot rely on challenged expert testimony, when critical to class certification, to demonstrate conformity with Rule 23 unless the plaintiff also demonstrates, and the trial court finds, that the expert testimony satisfies the standard set out in *Daubert*." *In re Blood Reagents Antitrust Litig.*, 783 F.3d 183, 187 (3d Cir. 2015). Thus, before deciding Plaintiffs' Motion for Class Certification, the Court must first determine whether Pohl's expert testimony is admissible.

### A. Chipotle's Motion to Exclude Opinions and Testimony of Pohl

Pohl offers opinions on the number of customers shortchanged by Chipotle, the rate of customers shortchanged by Chipotle, and the ascertainability of shortchanged customers. (*See* ECF Nos. 115, 177, 188-14, 195-2). These conclusions are largely based on Pohl's review of Chipotle's electronic data and of one day of video footage from fifteen Chipotle stores turned over

as part of the discovery process. (*See* ECF No. 195-2, p. 6). These fifteen Chipotle stores were selected using two methods: (1) ten of the stores were chosen "by randomly identifying 10 transactions between June 1, 2020, and October 31, 2020, out of the 467,238 cash transactions provided by CMG for that time period[;]" and (2) the remaining five stores and dates were chosen from a list of stores where customers had complained—either to class counsel or to Chipotle— about being shortchanged on a specific date. (*Id.* at 6-7). Pohl used Chipotle's transaction list to identify the date and time of possible shortchange events at those fifteen stores and reviewed the corresponding video footage. (*See id.* at 8). "If the transaction total was not a whole dollar amount, the customer only tendered bills, and no coins were returned," the transaction was categorized as being a "short-change event." (*Id.*). Chipotle moves to exclude the opinions and testimony of Pohl (ECF No. 195), arguing that it does not satisfy the requirements set forth in Federal Rule of Evidence 702.

"Under the Federal Rules of Evidence, a trial judge acts as a gatekeeper to ensure that any and all expert testimony or evidence is not only relevant, but also reliable." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008) (internal quotations omitted). Federal Rule of Evidence 702 ("Rule 702"), which codified the standards set out in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), "governs the admissibility of expert testimony [and] has a liberal policy of admissibility." *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997), as amended (Dec. 12, 1997). For expert testimony to be admissible under Rule 702, a trial judge, as gatekeeper, must be satisfied that: (1) the witness is qualified as an expert; (2) "the proposed testimony is reliable and relates to matters requiring scientific, technical, or specialized knowledge;" and (3) the "testimony is 'sufficiently tied to the facts of the case,' so that it 'fits' the dispute and will assist the trier of fact." *UGI Sunbury LLC v. A Permanent Easement for 1.7575*

*Acres*, 949 F.3d 825, 832 (3d Cir. 2020) (quoting *Daubert*, 509 U.S. at 591). Plaintiffs, as the proponent of the expert testimony, bear the burden of establishing its admissibility by a preponderance of the evidence. *Padillas v. Stork-Gamco, Inc.*, 186 F.3d 412, 418 (3d Cir. 1999).

Chipotle argues that Pohl's testimony should be excluded because it does not satisfy Rule 702's "reliability" requirement. The reliability requirement "applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, and the link between the facts and the conclusion." *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 291 (3d Cir. 2012). The reliability inquiry focuses "solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. "The evidentiary requirement of reliability is lower than the merits standard of correctness." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994). An expert opinion is considered reliable under Rule 702 if it is "based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief." *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 321 (3d Cir. 2003) (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d at 742).

Chipotle argues that Pohl's methodology is unreliable because his chosen sample of Chipotle stores is too small to be statistically significant or representative and because it was selected "with an eye towards attempting to locate other potential instances of change shorting (and consequently, not towards getting a real estimate of potential class size)." (ECF No. 195, p. 6). The inquiry into the reliability of an expert's methodology "is a 'flexible one' that should be tailored to the type of knowledge at issue." *In re Lincoln Nat'l COI Litig.*, No. CV 16-6605, 2022 WL 4091220, at *4 (E.D. Pa. Aug. 9, 2022) (citing *Pineda*, 520 F.3d at 248). Crucially, whether a sampling method is reliable "will depend on the objective." *Manual for Complex Litigation* § 11.493, at 102 (4th ed.).

Pohl's sample is limited to the review of one day of video footage from fifteen Chipotle stores (from between June 2020 and October 2020) and includes five Chipotle restaurants where a shortchanging event allegedly occurred or a store that did not have change on that day.  At the class certification stage, the purpose of Pohl's expert testimony and report "is simply to show the Court that a mechanism and methodology exist . . . to identify a putative class member."  (ECF No. 203, p. 11); *see also* (ECF No. 195-2, p. 6) ("In short, [Chipotle's] computer systems contain readily accessible data of all cash transactions at [Chipotle] stores in Pennsylvania, videos that allow a determination if a customer was short-changed, and customer details for individuals who are members of the Chipotle Rewards program.").  For this purpose, fifteen stores is a sufficiently large sample.

In addition to showing how class members can be potentially identified, Pohl's testimony and report also contains opinions relating to the rate and number of Chipotle customers allegedly shortchanged.  Based on the review of Chipotle's data, Pohl offers the opinion that, in Chipotle stores in Pennsylvania from June 2020 to October 2020, between 2.9% and 11.2% of cash-paying customers were likely shortchanged, which would total between 13,550 and 52,331 customers. (ECF No. 195-2, p. 10).  Applying these shortchange rates to the period of March 2020 to January 2022, he estimates that "the number of shortchange events in [Chipotle] stores in Pennsylvania for this period would be between 69,935 and 270,095." (*Id.*).  As Chipotle correctly points out, Pohl's estimates—most notably, the high end of his estimates, the overall percentages, and number of cash transactions shortchanged—are undeniably skewed by the inclusion of the five non-randomly selected stores in the sample.  Pohl's estimates, however, are also impacted by the inclusion of the ten randomly selected stores.  While the randomly selected stores and the non-randomly selected stores both impact Pohl's estimates, they each serve a distinct and necessary purpose.

For the purpose of showing that a mechanism exists for identifying class members, including stores where shortchanging is more likely to have occurred makes sense. If Pohl's sample included only Chipotle stores that had sufficient change, his testimony would serve little purpose. The randomly selected stores help establish Pohl's estimates regarding the frequency of Chipotle's alleged shortchanging on a broader scale. Pohl's report recognizes this and clearly distinguishes the findings of his review based on the method of selection. (*See id.* at 9-10). Given this, Pohl's methodology is reliable and "will help the trier of fact to understand the evidence or to determine a fact in issue[.]" Fed. R. Evid. 702(a).

In addition to pointing out potential flaws in Pohl's methodology, Chipotle also identifies opinions in Pohl's report that rely on certain assumptions. Most notably, Pohl assumes that if a Chipotle cashier did not provide coins to a cash-paying customer, the customer must have been shortchanged. However, to satisfy Rule 702's reliability requirement, Pohl's testimony does not necessarily have to be correct, it must only be based on "good grounds." *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d at 744. The grounds for the expert's opinion do not have to be perfect and "good grounds" for an expert's opinion can exist "even if the judge thinks that there are better grounds for some alternative conclusion, and even if the judge thinks that a scientist's methodology has some flaws such that if they had been corrected, the scientist would have reached a different result." *Id.* While Pohl's opinions and report rely on certain assumptions, those assumptions are based on procedures and analysis rather than on "subjective belief or unsupported speculation." *Id.* at 742. Given this, Pohl's testimony is based on "good grounds" and is sufficiently reliable to satisfy the standards set forth in Rule 702. As such, Pohl's testimony is admissible and will be considered in deciding Plaintiffs' Motion for Class Certification.

**B. Plaintiffs' Motion for Class Certification**

Having denied Chipotle's motion to exclude the expert testimony of Pohl, the Court turns

to Plaintiffs' Motion for Class Certification (ECF No. 188). Under Federal Rule of Civil Procedure

23 ("Rule 23"), a class may be certified where the moving party satisfies the four requirements of

Rule 23(a), and, depending on the avenue, the requirements of Rule 23(b)(1), (b)(2), or (b)(3). *See*

*Ferreras v. Am. Airlines, Inc.*, 946 F.3d 178, 182 (3d Cir. 2019). Under Rule 23(a):

> (1) the class must be so numerous that joinder of all members is impracticable
> (numerosity); (2) there must be questions of law or fact common to the class
> (commonality); (3) the claims or defenses of the representative parties must be
> typical of the claims or defenses of the class (typicality); and (4) the named
> plaintiffs must fairly and adequately protect the interests of the class (adequacy of
> representation, or simply adequacy).

*Id.* at 182–83 (citation omitted). If the moving party satisfies these requirements, the analysis turns

to Rule 23(b). *See id.* at 183. Under Rule 23(b)(3)—the chosen avenue in this case—"the

questions of law or fact common to class members [must] predominate over any questions

affecting only individual members" (predominance), and "a class action [must be] superior to other

available methods for fairly and efficiently adjudicating the controversy" (superiority). Fed. R.

Civ. P. 23(b)(3). Finally, as an implicit requirement of Rule 23(b)(3), "the class must be currently

and readily ascertainable based on objective criteria" (ascertainability). *Marcus v. BMW of N.*

*Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012); *see also Shelton v. Bledsoe*, 775 F.3d 554, 560 (3d

Cir. 2015).

A court can certify a class action only if, after conducting "a rigorous analysis," it is

satisfied that the requirements of Rule 23 have been met. *Wal-Mart Stores, Inc. v. Dukes*, 564

U.S. 338, 350–51 (2011) (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).

Rule 23 is no "mere pleading standard." *Id.* at 350. Rather, it requires that "factual determinations

be made by a preponderance of the evidence." *Ferreras*, 946 F.3d at 183. In other words, a court

"must find that the evidence more likely than not establishes each fact necessary to meet the requirements of Rule 23." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2008). A trial court "possesses broad discretion to control proceedings and frame issues for consideration under Rule 23." *Id.* at 310. Nevertheless, "[p]rior to certifying a class, a district court must resolve every dispute that is relevant to class certification." *Ferreras*, 946 F.3d at 183.

### 1.  Rule 23(a)(1): Numerosity

Rule 23(a)(1) requires proof that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While there is no minimum number of members required for a class to be certified, "a plaintiff . . . can generally satisfy [the] numerosity requirement by establishing 'that the potential number of plaintiffs exceeds 40.'" *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 486 (3d Cir. 2018) (quoting *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001)). A plaintiff is not required to "offer direct evidence of the exact number and identities of the class members[]" and a plaintiff can satisfy the numerosity requirement by presenting "circumstantial evidence specific to the products, problems, parties, and geographic areas actually covered by the class definition." *Marcus*, 687 F.3d at 596.

Plaintiffs have provided sufficient evidence to meet the numerosity requirement. Plaintiffs have "identified at least 75 customer short-changing complaints occurring in 42 different Chipotle stores across Pennsylvania, both before and after the events involving the named Plaintiffs." (ECF No. 188, p. 5); (*see also* ECF Nos. 188-9, 188-10, 188-11). Plaintiffs argue that the customers identified through complaints make up only a small portion of the shortchanged customers and, relying on Pohl's expert report, estimate that "there would be at least 13,550 class members." (*Id.* at 7); (*see also* ECF No. 195-2). Regardless, the shortchanged customers who issued complaints

to Chipotle or Plaintiffs' counsel—at least 75 customers from 42 different Chipotle stores—are sufficiently numerous to satisfy Rule 23(a)(1).

### 2. Rule 23(a)(2): Commonality

Rule 23(a)(2) states that "there must be questions of law or fact common to the class[.]" In other words, Plaintiffs' claims must be based on a common contention that "is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. Plaintiffs argue that the class claims are based on the common contention "that Chipotle corporate stores across Pennsylvania engaged in a policy or practice of penalizing a cash customer by rounding up the guest's bill so that the customer paid more than the advertised purchase price, with Chipotle keeping the change for itself." (ECF No. 188, p. 13). Chipotle, on the other hand, argues that, because there was no uniform company policy or practice instructing employees to withhold change from customers, each class member's allegation is "inherently individualized" and not based on a common contention capable of classwide resolution. (*See* ECF No. 197, pp. 11-12).

Chipotle did, in fact, have a corporate policy against providing incorrect change and instructed employees never to round a customer's bill up or keep a guest's change, even when offered. (*See* ECF Nos. 188-6, 188-7, 188-8). However, Plaintiffs' "common contention" is not that Chipotle instituted a company-wide policy instructing employees to shortchange customers, but that Chipotle allowed its employees to ignore its policies and engage in the practice of shortchanging customers. Whether a customer was shortchanged because of a company policy permitting shortchanging or because of a failure to enforce a company policy prohibiting shortchanging, Chipotle can be held liable "'solely on the basis of the existence of an employer-employee relationship,' regardless of whether the employer had any part in causing harm."

*Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010) (quoting *Monell v. Dep't of Soc.*

*Servs. of New York*, 436 U.S. 658, 692 (1978)).  This can be true even where an employee is acting

contrary to the employer's instructions.  *CGB Occupational Therapy, Inc. v. RHA Health Servs.*

*Inc.*, 357 F.3d 375, 386 (3d Cir. 2004).  Thus, Plaintiffs' claims depend on the common contention

that Chipotle permitted its employees to engage in a practice of shortchanging customers, despite

its official policy against shortchanging.   Plaintiffs have satisfied Rule 23(a)(2)'s commonality

requirement.

### 3.  Rule 23(a)(3): Typicality

Rule 23(a)(3) provides that "the claims or defenses of the representative parties must be

typical of the claims or defenses of the class[.]"  This rule "ensur[es] that the class representatives

are sufficiently *similar* to the rest of the class—in terms of their legal claims, factual circumstances,

and stake in the litigation—so that certifying those individuals to represent the class will be fair to

the rest of the proposed class."  *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597 (3d

Cir. 2009).   To satisfy the typicality requirement, the class representatives' claims must be

"generally the same" as the claims of the class as far as "the legal theory advanced and [] the

factual circumstances underlying that theory;" the class representatives cannot "be subject to a

defense that is both inapplicable to many members of the class and likely to become a major focus

of the litigation;" and the class representatives' interests and incentives must be "sufficiently

aligned with those of the class."  *Id.* at 599.

Chipotle argues that the claims made by McMahon and Rice are each subject to unique

defenses, rendering them atypical to those of the other class members.  (*See* ECF No. 197, p. 19).

Specifically, Chipotle argues that "McMahon's substantive claims are all fatally undermined by

her prior knowledge and willing participation in her counsel's scheme to create a class action and

representative.  She cannot have justifiably relied on any allegedly unlawful act by Chipotle when she had prior knowledge about it." (*Id.* at 20).  Similarly, Chipotle argues that Rice cannot establish justifiable reliance because "no allegedly unlawful practice had any effect on [his] decision to purchase food from Chipotle."  (*Id.*).

While some of Rice and McMahon's claims may be subject to individual issues involving justifiable reliance, "[s]o long as the alleged cause of the injury remains the same across [the class], 'even relatively pronounced factual differences will generally not preclude a finding of typicality.'" *Boley v. Universal Health Servs., Inc.*, 36 F.4th 124, 134 (3d Cir. 2022) (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 311 (3d Cir. 1998)). "Our jurisprudence assures that a claim framed as a violative practice can support a class action embracing a variety of injuries so long as those injuries can all be linked to the practice." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 184 (3d Cir. 2001), as amended (Oct. 16, 2001) (internal quotations omitted).  Here, Rice and McMahon claim that their injuries were caused by the same practice that caused the other class members' injuries— that is, Chipotle's alleged shortchanging.  Any individualized issues involving justifiable reliance are relatively minor and are not "likely to become a major focus of the litigation." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d at 599.  Given this, Rule 23(a)(3)'s typicality requirement is satisfied.

**4. Rule 23(a)(4): Adequacy**

Rule 23(a)(4) states that "the named plaintiffs must fairly and adequately protect the interests of the class[.]"  The rule "aims to root out conflicts of interest within the class to ensure that all class members are fairly represented." *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 428 (3d Cir. 2016); *see also Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)

(stating that Rule 23(a)(4) "serves to uncover conflicts of interest between named parties and the class they seek to represent").

Chipotle first argues that McMahon and Rice are not adequate class representatives because their claims are subject to individual defenses. Unique defenses can impact a class representative's ability to adequately represent the class because, if individualized defenses hurt a class representative's claims, the class representative "may lack the same financial stake as the other members of the class[] . . . or may have different incentives in terms of how much time, energy, and money she is willing to spend pursuing the claim." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d at 602. As discussed above, while some of McMahon and Rice's claims may be subject to individual issues regarding justifiable reliance, these issues are relatively minor and are unlikely to significantly impact the financial stakes or incentives of Rice or McMahon.

Chipotle next argues that McMahon and Rice are not adequate representatives because neither has adequate knowledge about the case. In an effort to show that McMahon and Rice were not sufficiently involved in the case to be adequate class representatives, Chipotle points out that, during their depositions, neither knew what remedies were being sought. (ECF No. 197, p. 22). To satisfy Rule 23(a)(4)'s adequacy requirement, named plaintiffs are required to "have a minimal degree of knowledge about the case[.]" *In re Suboxone Antitrust Litig.*, 967 F.3d 264, 272 (3d Cir. 2020) (cleaned up). A named plaintiff, however, must only show "a basic understanding of the allegations made in the case, and what law is alleged to have been violated[.]" *In re Res. Am. Sec. Litig.*, 202 F.R.D. 177, 187 (E.D. Pa. 2001); *see also In re Cephalon Sec. Litig.*, No. CIV.A. 96-0633, 1998 WL 470160, at *3 (E.D. Pa. Aug. 12, 1998) ("[I]t is unrealistic to require a class action representative to have an in-depth grasp of the legal theories of recovery behind his or her claim.").

Through their deposition testimony and conduct, McMahon and Rice have each demonstrated a basic understanding of the allegations being made and the laws Chipotle allegedly violated.

While an in-depth understanding of the legal theories of recovery in a class representative's case is not necessary, it is important "that the representative actively seeks vindication of his or her rights and engages competent counsel to prosecute the claims." *In re Cephalon Sec. Litig.*, 1998 WL 470160, at *3. Chipotle argues that McMahon and Rice—rather than actively seeking vindication of their rights—are passive participants in a lawyer-driven lawsuit. According to Chipotle, McMahon and Rice do not understand their obligations as class representatives and have not "assumed a modicum of responsibility of a class representative." (ECF No. 197, p. 22). To illustrate this, Chipotle claims that McMahon did not preserve relevant evidence and did not look for documents to produce until ordered to do so. (*Id.*) (citing ECF No. 197-17). However, both Rice and McMahon have participated in discovery (including submitting themselves to depositions), reviewed and verified the complaints, discussed their duties as class representatives, and have been kept up to date on the status of the case. (*See* ECF No. 188, p. 19). Additionally, Rice contacted Plaintiffs' counsel after the initiation of this lawsuit and volunteered to serve as a class representative without any prior communication with counsel or other class members. (ECF No. 188-23, p. 3).

Chipotle argues that, prior to Rice's involvement, the lawsuit was initiated by Salpietro's unethical solicitation of McMahon—who is a friend of Salpietro's daughter—"to have her attempt to receive rounded change at Chipotle in order to assert a class action against Chipotle." (ECF No. 197, p. 21). Because of this alleged solicitation, Chipotle argues that McMahon and Salpietro—as a class representative and class counsel, respectively—do not satisfy the adequacy requirement. The Court considered the facts surrounding Salpietro's alleged solicitation of McMahon in the

context of deciding Chipotle's Motion for Sanctions (ECF No. 157).  The Court denied Chipotle's motion but expressed its willingness to consider the alleged unethical conduct at the class certification stage, where—unlike deciding a motion for sanctions—the Court is required to make factual determinations and evaluate the reliability of testimony.  (*See* ECF No. 181, pp. 13-14).

McMahon testified that, despite knowing Salpietro prior to this lawsuit, her claims were initiated by her bringing them to Salpietro, not the other way around.  (ECF No. 188-21, p. 3).  According to Salpietro, he then asked McMahon to make a purchase at Chipotle's Allison Park store, not to initiate a lawsuit, but to test the pervasiveness of Chipotle's alleged shortchanging.  (*See* ECF No. 167, p. 8).  Based on this testimony and their involvement in the case thus far, the Court is satisfied that McMahon and Rice have the same interests and incentives as the rest of the class and that they have each shown the necessary willingness to perform the duties of a class representative.  Given this, the Court is satisfied that Rice and McMahon are adequate representatives of the class.

**5.  Rule 23(b)(3): Predominance**

Rule 23(b)(3) requires a plaintiff to demonstrate that "questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  The predominance requirement is related to, but "far more demanding" than, the commonality requirement.  *Amchem*, 521 U.S. at 623–24; *see also Reinig v. RBS Citizens, N.A.*, 912 F.3d 115, 127 (3d Cir. 2018) ("Rule 23(b)'s predominance requirement incorporates Rule 23(a)'s commonality requirement.").  Having satisfied Rule 23(a)'s commonality requirement, Plaintiffs must show that "the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation omitted).  In other words, to satisfy the

predominance requirement, Plaintiffs must show that the "essential elements of the class's claims can be proven at trial with common, as opposed to individualized, evidence." *Taha v. County of Bucks*, 862 F.3d 292, 308 (3d Cir. 2017) (citation omitted); *see also Amchem*, 521 U.S. at 623 ("The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.").

At Count I, Plaintiffs allege that Chipotle converted and misappropriated class members' money. (*See* ECF No. 102, ¶¶ 20-23). Under Pennsylvania law, conversion is the deprivation of, or interference with, another's right of property "without the owner's consent and without lawful justification." *Stevenson v. Econ. Bank of Ambridge*, 197 A.2d 721, 726 (Pa. 1964). "In the absence of any circumstances indicating misapplication or an intent to exercise dominion adverse to the owner, a demand and refusal is an essential element of an action for conversion." *Norriton E. Realty Corp. v. Cent.-Penn Nat. Bank*, 254 A.2d 637, 639 (Pa. 1969). "If the defendant lawfully came into possession of the chattel, conversion may still occur if demand for the chattel is made by the rightful owner and the party refuses to deliver." *Avanti Wind Sys., Inc. v. Shattell*, No. CV 3:14-98, 2016 WL 3211990, at *22 (W.D. Pa. June 9, 2016).

Chipotle argues that Plaintiffs must satisfy the demand and refusal element—which will require individual inquiries—because Chipotle cashiers were in lawful possession of the class members' cash. Under normal circumstances—where a cashier intends to return appropriate change to a customer—a cashier can be in lawful possession of a customer's cash while processing a transaction. Here, however, when accepting cash from a customer, Chipotle's cashiers knew that coin change could not be provided. Given this, Chipotle cashiers who accepted cash—knowing that proper change could not be returned—did so with "an intent to exercise dominion adverse to the owner." *Norriton*, 254 A.2d at 639. As such, Plaintiffs will not be required to prove demand

and refusal as part of their conversion claim and Plaintiffs' claims for conversion and misappropriation can be proven with common evidence.

At Count II, Plaintiffs bring claims under the UTPCPL, which, as one of its essential elements, requires evidence showing justifiable reliance. *See Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 224 (3d Cir. 2008), as amended (Nov. 6, 2008). Chipotle argues that the "justifiable reliance" element will require individual proof for each class member. However, as Plaintiffs point out, Chipotle customers inherently rely on prices represented by Chipotle as being accurate. *See Gregg v. Ameriprise Financial, Inc.*, 245 A.3d 637, 652 (Pa. 2021) (stating that when a seller fails to "clearly and fully explain" the cost of a product, a consumer is reasonable to believe "that they would not pay any additional money" for that product.). Given this, a showing of Plaintiffs' justifiable reliance will require common evidence relating to whether Chipotle customers—including class members—inherently rely on Chipotle's advertised prices when making a purchase. The Court is satisfied that this common issue will be more prevalent and more important than any individual issues related to justifiable reliance.

Chipotle also argues that Plaintiffs' claim for breach of contract will require individualized inquiries. Specifically, Chipotle argues that Pennsylvania's Uniform Commercial Code requires express pre-suit notification as a condition precedent to recovery on breach of contract claims. This rule requiring notification, however, "is designed to defeat commercial bad faith, not to deprive a good faith consumer of his remedy." 13 Pa. Cons. Stat. § 2607, Comment 4. With this in mind, a more relaxed standard is applied to retail buyers. In light of this relaxed standard, pre-suit notification on Plaintiffs' breach of contract claim is unlikely to be an issue in this case and will not be more prevalent or important than issues common to the entire class.

For each of Plaintiffs' claims, the Court holds that Plaintiffs have sufficiently demonstrated that questions common to class members predominate over any individual questions.

### 6. Rule 23(b)(3): Superiority and Manageability

Rule 23(b)(3) requires that "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The superiority requirement asks a district court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re Cmty. Bank of N. Va. Mortg. Lending Pracs. Litig., PNC Bank NA*, 795 F.3d 380, 409 (3d Cir. 2015) (citation omitted). Similarly, the manageability requirement "encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164 (1974).

Here, the class members each allege the same injuries, arising from the same alleged shortchanging conduct. Given this, individual lawsuits from class members would likely proceed similarly to a class action and the class members have no significant interest in controlling the litigation individually. As discussed above, issues common to all class members predominate over issues affecting only individual members. Additionally, "there is no competing class action that might reach a judgment before this case, and thus no concern over *stare decisis* or collateral estoppel." (ECF No. 188, p. 24). For these reasons, the class action mechanism is superior to other methods for adjudicating the controversy. Plaintiffs have satisfied Rule 23(b)'s superiority requirement.

### 7. Rule 23(b)(3): Ascertainability

As an implicit requirement of Rule 23(b)(3), "the class must be currently and readily ascertainable based on objective criteria." *Marcus,* 687 F.3d at 593. *See also Shelton,* 775 F.3d

at 562 ("The ascertainability requirement ensures that the procedural safeguards necessary for litigation as a (b)(3) class are met[.]").   "The ascertainability inquiry is two-fold, requiring a plaintiff to show that: (1) the class is 'defined with reference to objective criteria'; and (2) there is 'a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'" *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015) (quoting *Carrera v. Bayer Corp.*, 727 F.3d 300, 355 (3d Cir.2013)).   A plaintiff need not "be able to identify all class members at class certification[;]" rather, "a plaintiff need only show that 'class members *can* be identified.'"  *Id.* (quoting *Carrera,* 727 F.3d at 308 n.2).   "A plaintiff does not satisfy the ascertainability requirement if individualized fact-finding or mini-trials will be required to prove class membership."  *Carrera*, 727 F.3d at 307.

Plaintiffs' proposed class is defined by the following objective criteria: "whether a consumer used cash, and whether that consumer was given change of less than the difference between the amount tendered and the purchase price." (ECF No. 188, p. 10).  Plaintiffs claim that identifying class members who fall within this definition can be done "by a straight-forward review of existing records[.]"  (*Id.*).  Such a review would involve using Chipotle's electronic data, which can identify "the type of tender, [] the amount of the sale, the precise store, hour and minute of the transaction, check number, and even the identity of the cashier."  (*Id.* at 11).   Chipotle's transactional data, however, does not contain the identities of cash-paying customers.  (*See* ECF No. 197-8, p. 4).  Plaintiffs propose several methods to be used—in combination with Chipotle's transactional data—to identify and confirm class membership.   These methods include: (1) customer receipts, (2) customer complaints, (3) Chipotle Rewards information, (4) restaurant security surveillance footage, and (5) affidavits.  (ECF No. 188, pp. 11-12).

Plaintiffs contend that customer receipts can be used to confirm that a customer made a cash purchase at a specific day and time and that the customer was owed change. (*See* ECF No. 188-15). A customer who issues a complaint to Chipotle can be linked to a specific transaction in Chipotle's database to potentially identify the customer. (*See e.g.,* ECF Nos. 188-9, 188-10). If a shortchanged customer was a Chipotle Rewards member, they "can be ascertained by cross-referencing a provided Chipotle Rewards number with the cash transactions database." (ECF No. 188, p. 11). According to Chipotle's Director of Enterprise Analytics, "[b]etween January 1, 2020 and January 11, 2023, there were a total of 306,474 cash transactions associated with 107,011 Chipotle Rewards accounts across 118 different stores in Pennsylvania[.]" (ECF No. 197-12, ¶ 5). Using Chipotle Rewards information is the only way to definitively link a cash transaction to a particular customer. (*See* ECF No. 197-11, p. 4). Plaintiffs also suggest the use of affidavits to assist in identifying class members. Once a possible shortchanged customer is identified—whether through receipts, customer complaints, rewards information, or affidavits—video footage from Chipotle stores can be used to help identify the customer, to verify that the customer paid in cash, and to verify that no coins were returned to the customer.

Chipotle argues that Plaintiffs cannot review the necessary video footage—encompassing over 100,000 days and several million transactions—in a way that is administratively feasible. (*See* ECF No. 197, pp. 7-8). According to Plaintiffs, a transaction-by-transaction review will not be necessary because Pohl can place Chipotle's data "into a format that provides easy cross-reference and identification of transactions." (ECF No. 188, p. 11). Regardless, a high "number of records that must be individually reviewed[] . . . is not a reason to deny class certification." *Kelly v. RealPage Inc.*, 47 F.4th 202, 224 (3d Cir. 2022). Additionally, as Plaintiffs point out, the United States Court of Appeals for the Third Circuit recently stated that "a straightforward 'yes-

or-no' review of existing records to identify class members is administratively feasible even if it requires review of individual records with cross-referencing of voluminous data from multiple sources." *Id.* In that case—*Kelly*—all that was needed to ascertain whether class members fit within the objective criteria was a determination of which consumers directly requested their files, and of those files, which contained public record information. Both questions could be definitively answered by a review of records that were in defendant's possession. *See id.* at 223. Here, however, a "straightforward yes-or-no review" of Chipotle's records cannot definitively determine whether a proposed class member fits within the objective criteria.

The circumstances of this case more closely resemble those presented in *Parsons v. Philadelphia Parking Auth.*, No. CV 13-0955, 2016 WL 538215 (E.D. Pa. Feb. 11, 2016), where a class action lawsuit was brought against the Philadelphia Parking Authority for allegedly collecting and retaining parking fees at times when no fee was required. In *Parsons*, plaintiffs argued that the proposed class was ascertainable based on "documents produced by the Philadelphia Parking Authority, [showing that] the City received tens of thousands of payments totaling several millions of dollars for metered parking from those in the proposed class." *Id.* at *3 (internal citations omitted). The *Parsons* court held that plaintiffs had not met the burden of demonstrating the ascertainability of the proposed class because the plaintiffs failed to explain how those documents would link specific payments to class members (particularly those paying in cash) or how they would "tie payments to circumstances when 'parking was to be free of charge' or where payments were made 'beyond the time required by the applicable parking regulation signs.'" *Id.* at *4.

Here, Plaintiffs can use Chipotle's transaction data to determine whether a customer fits within the first part of their class definition—that is, whether the customer paid in cash; but

Plaintiffs fail to explain how that data can be used to show that a customer fits within the second part of their class definition—that is, whether the customer was shortchanged.  While the "change due" to a cash-paying customer could be ascertained from a review of Chipotle's data, "no electronic data reveals whether the customer actually received the correct change[.]"  (ECF No. 197, p. 7).  Plaintiffs argue that—after identifying a customer who paid in cash and was owed coin change—a review of Chipotle's cash register video footage can be used to determine whether the customer received coins back from the cashier.  (*See* ECF No. 195-2, pp. 6-7).  However, a determination that a customer was owed coin change and did not receive coins from the cashier does not establish that the customer was necessarily shortchanged.  A Chipotle cashier may have provided a higher amount of change in only bills or may have rounded the price of the customer's meal down to avoid shortchanging the customer.  These possibilities are plausible given Chipotle's coin shortage and its stated policy prohibiting employees from rounding up the price of a customer's meal.  Given the plausibility of these alternatives, Plaintiffs have not established—by a preponderance of the evidence—that class members can be ascertained through a review of Chipotle's data and video footage.

Plaintiffs argue that putative class members can submit affidavits that can be sufficiently corroborated by Chipotle's data and videos.  In *Hargrove v. Sleepy's LLC*, 974 F.3d 467 (3d Cir. 2020), to show that they were defendant's full-time employees, the plaintiffs submitted affidavits regarding their work requirements.  The statements made in those affidavits were corroborated by extensive employment records, including logs and pay statements.  *Id.* at 472-473.  The Third Circuit held that the plaintiffs in *Hargrove* satisfied the ascertainability requirement and reiterated that "[a]ffidavits, in combination with records or other reliable and administratively feasible means, can meet the ascertainability standard."  *Id.* at 470.  Here, unlike in *Hargrove*, affidavits of

22

class members claiming to have been shortchanged cannot be corroborated by any of Chipotle's records. The Court cannot, without corroboration, blindly accept class members' declarations that they fit within the class definition. *See Byrd,* 784 F.3d at 164 (cautioning "against approving a method that would amount to no more than ascertaining by potential class members' say so."). At best, the use of class member affidavits would require mini trials to test the credibility of declarants. At worst, even this exercise would—beyond merely taking the declarant's word for it—do little to determine whether any individual is, in fact, an appropriate class member.

Ultimately, because Chipotle's data and video footage cannot show that any given customer was shortchanged, Plaintiffs are left relying on declarations from class members to establish that they fit within the class definition. Because these declarations cannot be corroborated, determining whether any given class member fits within the objective criteria of the class would require an individual inquiry into the circumstances of their transaction and the credibility of their testimony. Given the necessity of these individual inquiries, Plaintiffs have not satisfied the ascertainability requirement. As it stands, Plaintiffs have not identified any reliable method by which the identities of class members can be ascertained pursuant to Rule 23(b)(3). Class certification is not appropriate.[1]

---

[1] Because the putative class cannot be certified, the Court need not examine whether Rothman Gordon, P.C. should be appointed as class counsel.

### III.   CONCLUSION

For the reasons set forth above, Chipotle's Motion to Exclude Opinions and Testimony of Matthew E. Pohl (ECF No. 195) will be denied; Plaintiffs' Motion for Class Certification (ECF No. 188) will be denied; and Plaintiffs' Motion to Appoint Rothman Gordon, P.C., as Class Counsel (ECF No. 187) will be denied as moot.  An Order of Court will follow.

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

4-3-23

Dated