IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRIDGET MCMAHON and JAMES RICE,
on behalf of themselves and all others
similarly situated,

*Plaintiffs*,

v.

CHIPOTLE MEXICAN GRILL, INC., t/d/b/a
CHIPOTLE,

*Defendant*.

Civil Action No. 2:20-cv-1448

Hon. William S. Stickman IV

## **MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiffs Bridget McMahon ("McMahon") and James Rice ("Rice") (collectively, "Plaintiffs") visited two separate Chipotle Mexican Grill, Inc. ("Chipotle") restaurants to purchase a meal, and they paid with cash in each instance. Due to a nationwide coin shortage, Chipotle was unable to give Plaintiffs exact change. Both took their food and left. Later, they filed this action against Chipotle on behalf of themselves and similarly situated consumers raising misappropriation (Count I), conversion (Count I), unfair trade practices (Count II), breach of contract (Count III), unjust enrichment (Count III), and injunction (Count IV)[1] claims. (ECF No.

---

[1] At Count IV, Plaintiffs request the Court compel Chipotle's conduct by (1) "enjoining Chipotle from refusing to provide correct change to customers who tender cash as a form of payment for Chipotle's goods or services;" (2) "requiring Chipotle, if it fails to provide correct change … , to give the customers who tender cash as a form of payment a credit toward future purchases;" (3) "enjoining Chipotle from selling goods or services to consumers who cannot or do not use a credit card at a higher effective purchase price than the same purchase made by those who have and use a credit card;" and "awarding such other relief as this Court deems appropriate." (ECF No. 102, pp. 9-10). This is a request for relief and not a cause of action. For the reasons outlined herein, no injunctive relief will issue.

102).  The Court has previously denied Plaintiffs' motion to certify the putative class action.  (ECF No. 217).  Only Plaintiffs' individual claims remain.  Now before the Court is Chipotle's Motion for Summary Judgment ("Motion") (ECF No. 230).  For the reasons that follow, the Court will grant Chipotle's Motion and will enter judgment in its favor against Plaintiffs.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On August 20, 2020, Plaintiffs filed a Class Action Complaint against Chipotle in the Court of Common Pleas of Allegheny County alleging that Chipotle misappropriated consumer funds and engaged in unfair trade practices by failing to provide exact change to customers.  (ECF No. 1).  On September 25, 2020, Chipotle removed the action to this court.  (*Id.*).  Plaintiffs Megan Fox ("Fox") and McMahon filed a Motion for Remand, which the Court denied.  (ECF No. 3); (ECF No. 38).  After initial discovery, the Court granted Plaintiffs' Motion for Leave to Withdraw Class Representative, Amend Class Action Complaint, and Substitute/Allow Intervention of New Class Representative.  (ECF No. 100).  Plaintiffs filed an Amended Class Action Complaint ("Amended Complaint") on January 26, 2022, withdrawing Fox as the class representative and substituting Rice as the new class representative.  (ECF No. 102).  In the Amended Complaint, Plaintiffs allege that Chipotle did not provide exact change to McMahon and Rice after they paid cash for their food at Chipotle restaurants.  (*Id.* at pp. 3-4).

The facts that relate to McMahon begin on August 12, 2020, when counsel for Plaintiffs, Frank Salpietro ("Frank" or "Mr. Salpietro"), requested his daughter, Isabella Salpietro ("Izzy"), reach out to her friends to do an "experiment" at their local Chipotle.  (ECF No. 230-11, p. 2).  To "test[] a class action," Mr. Salpietro had Izzy put a message into a group chat with her friends, which included McMahon, Fox, and Carly Martin, to order a "burrito" and pay with a twenty-

2

dollar bill. (*Id.*).[2] The first friend of Izzy who attempted to help Mr. Salpietro was Fox. (*Id.* at p.

3). Fox's attempt, however, failed because she paid with a card instead of cash. (*Id.* at p. 3). This

---

[2] Specifically, the Court notes that Plaintiffs' Responses to Defendant's Concise Statement of Material Facts states:

> The iMessage stated, 'do an experiment … go to Chipotle with a [twenty-dollar] bill, order a burrito that will cost around $8.24. See if they give you $11.00 back instead of the correct change. I am testing a class action.'

(ECF No. 239, p. 4) (cleaned up). In providing an explanation, Plaintiffs submit,

> Mr. Salpietro was prompted to 'test' the class action because Mr. Salpietro learned from another customer (who happened to be his law partner) that Chipotle short-changed him and told him this was 'company policy.'

(*Id.*). Next, the Court refers to the following text messages in Exhibit 8 of Chipotle's Motion for Summary Judgment:

> Izzy:  "In the next couple of days[,] I need you and maybe a friend to do an experiment:  Go to Chipotle with a [twenty-dollar] bill.  Order a burrito that will cost around $8.24.  See if they only give you $11 back instead of the correct change. I'm testing a class action."

> McMahon:  "Can I order my bowl that costs [$]7.74[?]"

> Fox:  "Let us know … [h]ow undercover boss goes[.]"

> Izzy:  "Holy [F]rank needs a representative[.]"  "Who's gonna do it[?]"  "Not allowed [because] I'm hi[s] daughter[.]"

> Izzy:  "It'll only work now if you're in [Pennsylvania.]"

> Izzy: "[Because] there is a secret law saying you can't discriminate with cash[.]"

> McMahon:  "If he still needs another on Tuesday[,] tell him I'm his girl!"  "He missed me by a day[.]"

> Izzy:  "We might have to send [F]ox back for the receipt[,] [o]r [B]ridge can go tomorrow[.]"

> Izzy:  "[B]ridge[,] make sure you get [the] receipt tomorrow[.]"

> Fox:  "I can go back tomorrow[.]" (after forgetting to pay in cash).

meant for "Frank [to] tak[e] them down," he needed McMahon to go next and remember to keep the receipt. (*Id.* at p. 4).

On August 18, 2020, McMahon entered the Chipotle store in Allison Park, Pennsylvania, and ordered $15.51 worth of food. (ECF No. 102, p. 2). After she ordered, McMahon testified that as she handed the cashier a twenty-dollar bill to pay for her food, the cashier told her that Chipotle "cannot give you the correct change." (ECF No. 230-13, pp. 9-10). In response, McMahon testified that she said "okay," and took her food and walked out. (*Id.* at p. 9). As a result, McMahon only received $4.00 in change instead of the $4.49 that Plaintiffs claim Chipotle owed her. (ECF No. 102, p. 3).

Unlike McMahon, Rice had no part in Izzy's text message group chat. On October 10, 2020, Rice, a "Chipotle regular," walked into his local Chipotle in Warrington, Pennsylvania, and, without looking up at the menu, ordered two items, including a burrito bowl, worth $10.55. (ECF No. 102, p. 3); (ECF No. 233, p. 4); (ECF No. 239, p. 6). According to Rice, Chipotle is his favorite restaurant so he does not have to look at the menu to know what he wants to order. (ECF No. 233, p. 4); (ECF No. 239, p. 6). At the cash register, Rice tendered a twenty-dollar bill to the

---

Izzy:   "Holy hell[,] Fox wants the money[.]"

McMahon:   "Fox[,] why wouldn't you pay with cash[?]"

Izzy:   "Holy hell[, Frank] wants it ASAP so other people don't take [the lawsuit,] but you're probably fine[.]"

Izzy:   "Holy[,] they really asked you if no change was ok[ay?]   Frank is taking them down!"

McMahon:   "Ask [F]rank if he still needs me to go Tuesday[,] so I can get cash[.]"

(ECF No. 230-11).

4

cashier to pay for his food. (ECF No. 102, p. 3). The cashier handed him back a receipt, his order, and $9.00 in change, prompting Rice to inform her that she "didn't give [him] the coins." (ECF No. 102, p. 3); (ECF No. 241-4, p. 14). The cashier answered that she "was instructed not to give coins today." (ECF No. 241-4, p. 14). Rice then asked, "[y]ou're not instructed to give the customer [their] money back?" (*Id.*) (cleaned up). The cashier responded, "I'm only going by what my manager said." (*Id.*). Rice testified that he did not reply to her because he did not want to create a commotion with the lines backed up. (*Id.* at p. 16). So, Rice "accepted it," and left the restaurant with his food. (*Id.* at pp. 16-17). Rice contends that he should have received $9.45, the amount shown on the receipt. (ECF No. 102, pp. 3-4). Then, he filed a complaint with the Pennsylvania Attorney General's Office. (ECF No. 241-4, p. 17).

As a result of their combined experiences, Plaintiffs claim that Chipotle "has instituted a company policy and/or practice, or has otherwise acquiesced in a practice, whereby its employees do not return the full amount of change due to a consumer, but instead round down the change due, return the lower amount to the consumer, and pocket the difference." (ECF No. 102, p. 2). Based on this alleged shortchanging, Plaintiffs claim that Chipotle breached its agreement with customers, violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), and misappropriated and converted funds. (ECF No. 102, pp. 5, 6, 8).

## II.   STANDARD OF REVIEW

Summary judgment is warranted if the Court is satisfied that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if it must be decided to resolve the substantive claim or defense to which the motion is directed. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is a genuine dispute of material

fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court must view the evidence presented in the light most favorable to the nonmoving party. *Id.* at 255. It refrains from making credibility determinations or weighing the evidence. *Id.* "[R]eal questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof[]" will defeat a motion for summary judgment. *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007).

### III.   ANALYSIS

Plaintiffs have asserted tort (misappropriation and conversion), statutory (UTPCPL), and contract-based claims (breach of contract and unjust enrichment) against Chipotle. (ECF No. 102, pp. 5, 6, 8). Chipotle contends that, in light of the undisputed record in this case, each of Plaintiffs' claims fail. (ECF No. 230-2, p. 2). The Court agrees.

As a threshold matter, multiple issues in this case turn on whether a contract existed between Plaintiffs and Chipotle. Although neither party disputes that they entered into oral sales contracts to purchase food at Chipotle's restaurants, the Court will evaluate whether binding contracts exist between the parties.

A contract for the sale of goods is governed by Article 2 of the Uniform Commercial Code ("UCC"), which Pennsylvania has adopted. *Allegheny Energy Supply Co. v. Wolf Run Mining Co.*, 53 A.3d 53, 62 (Pa. Super. 2012) (citing 13 PA. CONS. STAT. § 2101 *et seq.*). Section 2105(a) of Pennsylvania's UCC defines "[g]oods" as "all things … which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid." 13 PA. CONS. STAT. § 2105(a). When it comes to formation, "[a] contract for [the] sale of goods may be made in any manner sufficient to show agreement," including the parties' conduct. 13 PA. CONS. STAT. § 2204(a).

Under Plaintiffs' versions of the facts, a contract for the sale of goods exists. The subject of the transaction, Chipotle's food, falls under the UCC's broad definition of goods. Plaintiffs and Chipotle mutually exchanged food for cash payment. McMahon ordered $15.51 worth of food before exchanging payment with the cashier. (ECF No. 102, p. 2). Rice ordered food worth $10.55 and paid the cashier with cash. (*Id.* at p. 3). The Court concludes that enforceable contracts existed between Plaintiffs and Chipotle.

### A.      The gist of the action doctrine bars Plaintiffs' tort-based claims.

Chipotle contends that Plaintiffs cannot maintain their claims sounding in tort, misappropriation and conversion, because they are barred by Pennsylvania's gist of the action doctrine. (ECF No. 230-2, p. 7). The Court agrees.

The gist of the action doctrine prevents a party "from pursuing a tort action for the breach of contractual duties in the absence of any separate or independent event giving rise to the tort." *Bull Int'l, Inc. v. MTD Consumer Grp., Inc.*, 654 F. App'x 80, 101 (3d Cir. 2016) (citation omitted). In other words, the doctrine "precludes tort claims where the true gravamen, or gist, of the claim sounds in contract." *Dommel Props. LLC v. Jonestown Bank & Tr. Co.*, 626 F. App'x 361, 364 (3d Cir. 2015). The Supreme Court of Pennsylvania reexamined the doctrine in *Bruno v. Erie Ins.*, 106 A.3d 48, 68 (Pa. 2014) and explained that a determination of whether an action is brought as a claim in tort or contract depends on "the nature of the duty alleged to have been breached." More specifically, it noted that:

> If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—*i.e.*, a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

*Id.* (internal citations omitted) (emphasis added).  Put simply, that doctrine precludes tort claims if

the parties' obligations are defined by contractual terms "and the tort duplicates those obligations."

*Bert Co. v. Turk*, 257 A.3d 93, 110 (Pa. Super. 2021), *aff'd*, 298 A.3d 44 (Pa. 2023).  This duty-

based approach is "the touchstone standard for ascertaining the true gist or gravamen of a claim

pled by a plaintiff in a civil complaint." *Bruno*, 106 A.3d at 69.

  The center of the parties' dispute as to Count I hinges on whether Plaintiffs'

misappropriation and conversion claims are rooted in contract.  (ECF No. 241, p. 9).  Chipotle

argues that the gist of the action doctrine bars Plaintiffs' tort claims because Plaintiffs concede that

the transactions at issue amount to sales contracts, which Pennsylvania's UCC governs.  (ECF No.

230-2, p. 8).  From Chipotle's perspective, the tortious conduct alleged by Plaintiffs plainly

duplicates their breach of contract claims.  (*Id.*).  Plaintiffs oppose Chipotle's argument, asserting

that Chipotle's position is misplaced.  (ECF No. 241, p. 9).  Plaintiffs argue that the United States

Court of Appeals for the Third Circuit has held that tort and breach of contract claims can co-exist

"regardless of the contract." (*Id.*).  It is their position that Chipotle took an amount in excess of

the purchase price without a legal right or justification.  (*Id.*).

  The Court ultimately agrees with Chipotle that both of Plaintiffs' tort claims in Count I are

barred by the gist of the action doctrine.  The Third Circuit has specifically held that the doctrine

will bar a conversion claim where the parties' relationship is centered on a contract-based

transaction.  It explained, "a claim for conversion cannot stand when there is a contract between

the parties that governs the same disputed funds ... because the dispute is better handled as a breach

of contract." *Scott v. PNC Bank, Nat'l Ass'n*, 785 F. App'x 916, 920 (3d Cir. 2019).  A claim of

conversion must further be supported by an allegation that the defendant breached duties imposed

by law as a matter of social policy.  *See McKesson Corp. v. Campbell*, 134 A.3d 502 (Pa. Super. 2015).

Viewing the evidence in the light most favorable to Plaintiffs, the Court concludes that the claims sound in contract.  Neither party disputes that Plaintiffs and Chipotle entered into sales contracts to purchase food.  The parties' contracts obliged Plaintiffs and Chipotle to exchange money for food.  When Plaintiffs provided the cashiers more money than what the food cost, their contract necessitated (barring no modifications or waivers) that the cashiers return the difference to Plaintiffs.  These same funds–the change that Plaintiffs allege Chipotle failed to provide them– are at issue in Plaintiffs' conversion and misappropriation claims.  (ECF No. 102, pp. 3-4). Furthermore, no cause of action would exist had Chipotle given Plaintiffs their exact change, which Plaintiffs claim the parties' contracts necessitated.  As a result, the gist of the action doctrine bars Plaintiffs' conversion and misappropriation claims because they are essentially claims for breach of contract, *i.e.*, for failure to deliver what was promised under a contract.  *See Turuvekere v. ContinuServe, LLC*, No. 12-5158, 2012 WL 5961957 at *4.  The Court will grant Chipotle's Motion as to both Plaintiffs for Count I.

**B.     Chipotle is entitled to summary judgment as a matter of law on Plaintiffs' unfair trade practices claims.**

Plaintiffs assert statutory claims under the UTPCPL.  (ECF No. 102, p. 6).  The Court holds that the claims fail as a matter of law.  "The general purpose of [the UTPCPL] is to protect the public from fraud and unfair or deceptive business practices."  *Levine v. First Am. Title Ins.*, 682 F. Supp. 2d 442, 466 (E.D. Pa. 2010) (citing *Neal v. Bavarian Motors, Inc.*, 882 A.2d 1022, 1029 (Pa. Super. 2005)).  The UTPCPL "imposes [strict] liability on commercial vendors who engage in conduct that has the potential to deceive and which creates a likelihood of confusion or

misunderstanding." *Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637, 649 (Pa. 2021).  To bring a

claim under the UTPCPL, a consumer must show that:

> (1) they *purchased* or leased *goods* or services primarily for a personal, family, or
> household purpose; (2) they *suffered an ascertainable loss of money* or property;
> (3) the loss occurred as a result of the use or employment by a vendor of a method,
> *act, or practice declared unlawful* by the [UTP]CPL; and (4) the consumer
> *justifiably relied* upon the unfair or deceptive business practice *when making the*
> *purchasing decision.*

*Id.* at 646 (quoting 73 PA. STAT. AND CONS. STAT. ANN. § 201-9.2(a)) (internal quotation marks

omitted) (emphases added).  The UTPCPL specifies twenty unfair or deceptive acts and includes

a catch-all provision prohibiting commercial vendors from "[e]ngaging in any other fraudulent or

deceptive conduct which creates a likelihood of confusion or of misunderstanding."  73 PA. STAT.

AND CONS. STAT. ANN. § 201-2(4)(xxi); *Commonwealth v. Chesapeake Energy Corp.*, 247 A.3d

934, 936 (Pa. 2021).

The first two elements of Plaintiffs' UTPCPL claim are not at issue.  Chipotle does not

dispute that both Plaintiffs purchased food for themselves at two separate Chipotle locations.  Nor

does Chipotle dispute that Plaintiffs suffered an ascertainable loss.[3]  Instead, the parties' dispute

centers on the remaining two elements.

As to the third element, Plaintiffs argue that Chipotle's conduct violated the statute's catch-

all and false advertising provisions, 73 PA. STAT. AND CONS. STAT. ANN. § 201-2(4)(ix) and 73 PA.

STAT. AND CONS. STAT. ANN. § 201-2(4)(xxi).  (ECF No. 102, pp. 6-7).  Plaintiffs argue that

Chipotle violated the UTPCPL in five ways.  (*Id.* at pp. 6-7).  First, Plaintiffs allege that Chipotle

violated 73 PA. STAT. AND CONS. STAT. ANN. § 201-2(4)(ix) by advertising the price of goods with

the intent not to sell them as advertised.  (*Id.* at p. 6).  Second, Plaintiffs claim Chipotle violated

---

[3] Chipotle contends that Plaintiffs cannot establish "their supposed reliance on any conduct by
Chipotle directly caused them to suffer an 'ascertainable loss.'"  (ECF No. 230-2, p. 17).

73 Pa. Stat. and Cons. Stat. Ann. § 201-2(4)(xxi) by deceptively and confusingly indicating on the customer's receipt that the consumer received their exact change, which he or she did not, thereby eliminating the consumer's ability to secure proof of Chipotle's conversion and misappropriation. (*Id.* at p. 7). Third, Plaintiffs claim Chipotle violated 73 Pa. Stat. and Cons. Stat. Ann. § 201-2(4)(xxi) by engaging in fraudulent or deceptive conduct, which creates a likelihood of confusion or misunderstanding when a consumer tenders cash at the end of a transaction, only to be told that the effective price of the product he or she must pay is higher than what was initially ordered.   (*Id.*).   Fourth, Plaintiffs allege perpetuating confusion and misunderstanding to the extent Chipotle selectively enforces its directives and/or ignores or acquiesces in violation of these directives and/or provides inconsistent directives to its wholly owned stores, which, in turn, result in ascertainable losses to consumers. (*Id.*).  Fifth, Plaintiffs allege that Chipotle's conversion and misappropriation of the consumer's cash in violation of Pennsylvania law discriminates against cash consumers.  (*Id.*).   Finally, as to the fourth element, Plaintiffs contend that both McMahon and Rice justifiably relied upon Chipotle's unfair and deceptive practice when making their purchasing decision. (ECF No. 241, p. 16).

Chipotle responds that Plaintiffs cannot establish that it engaged in fraudulent, unfair, or deceptive conduct.  (ECF No. 230-2, p. 14).  Put simply, Chipotle claims that Plaintiffs cannot prove that their conduct violated one of the UTPCPL's enumerated deceptive acts.

Viewing the evidence in the light most favorable to Plaintiffs, the record does not support a finding that Chipotle's alleged false representation likely made a difference in Plaintiffs' purchasing decisions or that Plaintiffs justifiably relied upon Chipotle's alleged misconduct. Accordingly, the Court will grant Chipotle's Motion as to Count II.  The Court now turns to explain

the merits for each subsection of the UTPCPL that Plaintiffs allege Chipotle violated, 73 PA. STAT. AND CONS. STAT. ANN. §§ 201-2(4)(ix) and 201-2(4)(xxi).

> ### 1. Neither McMahon nor Rice can demonstrate that Chipotle's alleged false representation deceived them or affected their purchasing decisions.

Subsection (ix) of the UTPCPL relates to false advertising claims. The provision prohibits "[a]dvertising goods or services with intent not to sell them as advertised." 73 PA. STAT. AND CONS. STAT. ANN. §§ 201-2(4)(ix). False advertising claims require the plaintiff to prove three elements: "(1) a defendant's representation is false; (2) it actually deceives or has a tendency to deceive; and (3) the representation is likely to make a difference in the purchasing decision." *Corsale v. Sperian Energy Corp.*, 412 F. Supp. 3d 556, 562-63 (W.D. Pa. 2019) (citation and internal quotation marks omitted).

The Pennsylvania Supreme Court, in *Weinberg v. Sun Co.*, 777 A.2d 442 (Pa. 2001), explained that no state authority allows private plaintiffs to bring a false advertising claim against an advertiser when they were not deceived nor influenced by the advertisement in question. *Id.* at 446 ("There is no authority which would permit a private plaintiff to pursue an advertiser because an advertisement might deceive members of the audience and might influence a purchasing decision when the plaintiff himself was neither deceived nor influenced.").[4] In *Weinberg*, gasoline consumers sued Sunoco over the advertisement of its high-octane gasoline. *Id.* at 443-44. The gasoline consumers alleged that Sunoco's advertisements induced any gasoline consumer to purchase its high-octane product even if their vehicles did not need the high-octane levels in their

---

[4] In reasoning that Pennsylvania's state legislature enacted the UTPCPL in 1968 and added a private cause of action in 1976, the Pennsylvania Supreme Court explained that "[n]othing in the legislative history suggests that the [state] legislature ever intended statutory language directed against consumer fraud to do away with the traditional common law elements of reliance and causation." *Id.*

fuel to function, which raised the purchasing price for all consumers. *Id.* The Pennsylvania Supreme Court, however, found in favor of Sunoco after ruling that the gasoline consumers did not suffer an ascertainable loss *as a result of* Sunoco's prohibited action. *Id.* at 446. For a plaintiff to allege reliance, the Pennsylvania Supreme Court stated that the plaintiff must have purchased the high-octane gasoline because they heard and believed Sunoco's false advertising that the product would boost their vehicle's engine performance. *Id.* Additionally, the Pennsylvania Supreme Court held that the UTPCPL requires the plaintiff to allege that they "purchased the [high-octane] gasoline for personal or household purposes as opposed to business purposes, that [the plaintiff] drove a vehicle whose engine would not benefit from the high octane of [the product], as well as the amount [they] purchased in order to establish the amount of [their] ascertainable loss." *Id.*

Pursuant to *Weinberg,* the Court must determine if McMahon and Rice brought their lawsuit in the public interest or if they were actually deceived and the deceptive advertisement influenced their purchasing decisions. Plaintiffs do not address how they were deceived directly by Chipotle's alleged false advertisement. Additionally, Plaintiffs do not address whether Chipotle's alleged false representation affected either of their purchasing decisions or how it would have made a difference. In fact, Plaintiffs' version of the facts demonstrates the opposite. In their own ways, neither McMahon nor Rice relied upon the posted prices on Chipotle's menu in choosing to make a purchase. Further, both McMahon and Rice had the opportunity to withdraw from the transaction but instead decided to follow through. (ECF No. 230-13, p. 9); (ECF No. 241-4, p. 14). The Court holds that (1) Chipotle's alleged false representation deceived neither McMahon nor Rice; and (2) no representation by Chipotle affected either of their purchasing

decisions.  The Court will further elaborate on Plaintiffs' subsection (ix) claim as it relates to McMahon and Rice separately.

### a.  Chipotle's alleged false representation did not deceive McMahon or affect her decision to purchase food.

While at the cash register, McMahon testified that the cashier informed her that Chipotle could not give her exact change *before* they exchanged cash for the food.[5]  (ECF No. 230-13, p. 9).  But McMahon does not allege that Chipotle forced her to go through with the transaction or informed her of the coin shortage after she and the cashier completed the transaction.  Instead, McMahon's testimony reveals that rather than relying upon—and being deceived by—Chipotle's failure to give exact change, McMahon went to Chipotle *because* she knew about the change issue and wanted to be shortchanged.

As Plaintiffs concede, Mr. Salpietro requested McMahon, through Izzy, do an "experiment" at Chipotle by ordering a "bowl" and paying with a twenty-dollar bill.  (*Id.* at p. 2).  McMahon texted Izzy on August 16, 2020, asking if "[Frank] … still needs me to go Tuesday[,] so I can get cash."  (*Id.* at p. 6).  Two days later, McMahon went to a Chipotle restaurant in Allison Park, Pennsylvania, and paid for her food with a twenty-dollar bill.  (ECF No. 102, p. 2).  After exchanging cash for food with the cashier, she took her purchase and walked out.  (ECF No. 230-13, p. 9).

Viewing the evidence in the light most favorable to McMahon, no reasonable jury could conclude that Chipotle's alleged false representation deceived her.  McMahon entered the restaurant at the direction of Mr. Salpietro, via Izzy, knowing that she would not receive exact change so that Mr. Salpietro could pursue a lawsuit against Chipotle.  (*See* ECF No. 230-11).  As

---

[5] Although Plaintiffs argue that this is a disputed fact, McMahon's testimony shows otherwise. (ECF No. 239, p. 4).

the Pennsylvania Supreme Court elucidated in *Weinberg,* for the gasoline consumers to have had a claim, they must have purchased the high-octane gasoline at issue because they heard and believed Sunoco's false advertising. *See Weinberg*, 777 A.2d at 446. Here, Plaintiffs' evidence does not show that McMahon purchased food from Chipotle for any other reason besides Izzy's request via text message. (*See* ECF No. 230-11). The evidence shows McMahon went to Chipotle with cash because "Frank need[ed] a representative," and as McMahon said in her own words, she was "his girl." (*Id.* at pp. 2, 3).

Even if Chipotle's alleged false representation had deceived McMahon, no record evidence suggests that the false representation affected McMahon's purchasing decision. When Chipotle's cashier re-informed her of the coin shortage, McMahon chose to follow through and complete the transaction. (ECF No. 230-13, p. 9). After the cashier informed her that Chipotle could not give her exact change, McMahon testified that she responded "okay," and took her food and walked out. (*Id.* at pp. 9-10). No reasonable jury could conclude that Chipotle's alleged false representation deceived her or affected her purchasing decision. The Court will grant the Motion as to McMahon's subsection (ix) claim within Count II.

### b. Chipotle's alleged false representation did not deceive Rice nor affect his decision to purchase food.

Viewing the evidence in the light most favorable to Rice, no reasonable jury could conclude that the alleged false representation deceived him or influenced his decision with respect to the purchase of the food. As *Weinberg* instructs, false representation claims require a plaintiff to suffer an ascertainable loss as a result of the defendant's prohibited action. *See Weinberg*, 777 A.2d at 446. It also requires that for Plaintiffs to have a claim, they must have purchased the falsely represented product *because* they heard and believed the false advertising. *See id.*

Here, the posted prices could not have impacted Rice's decision to purchase food because the record establishes that he never looked at the menu.  (ECF No. 230-1, p. 4); (ECF No. 239, p. 6).  Although Rice is a Chipotle regular who frequents the establishment enough not to have to look at the menu when ordering, Plaintiffs do not allege, and the record does not reflect, that Rice has the prices memorized.  These circumstances make it hard to understand how he would have known about Chipotle's allegedly false representation as to price before the moment he glanced at his receipt.  The record contains no evidence that relates to Rice's reliance on any false representation made by Chipotle that would convince a jury to believe that Chipotle deceived him.

Plaintiffs also failed to submit evidence that would suggest Chipotle's alleged representation influenced Rice's decision to purchase food.  Rice entered the Chipotle restaurant, ordered his food without looking at the price, and gave the cashier a twenty-dollar bill.  (ECF No. 230-1, pp. 4-5); (ECF No. 239, pp. 6-7).  Although he asked the cashier for the exact change, Rice "accepted" the transaction after she told him that her manager instructed her not to give coin change.  (ECF No. 241-4, pp. 14, 16).  Before leaving the restaurant, Rice waited in front of the cash register for an additional side topping he requested.  (ECF No. 230-1, p. 5); (ECF No. 239, p. 7).  At that time, he did not attempt to initiate a withdrawal from the transaction and he did not voice any additional concerns over not receiving his exact change.  It was not until sometime after the interaction when he filed a complaint with the Pennsylvania Attorney General's Office.  (ECF No. 241-4, p. 17).

Plaintiffs do not put forth evidence that demonstrates the alleged false representation affected Rice's purchasing decision.  Nor do Plaintiffs allege that the increased cost of $0.45, the change Rice alleges Chipotle shorted him, would have affected his decision to purchase his burrito bowl.  Instead, Rice concedes that he "accepted" the shortchanging because he "didn't want to

create commotion" with the lunchtime rush and left the restaurant. (*Id.* at p. 16). Without more, Plaintiffs' claim that Chipotle's false representation deceived Rice or influenced his decision with respect to the purchase of the food is insufficient to survive a motion for summary judgment. The Court will grant the Motion as to Rice's subsection (ix) claim within Count II.

> **2. Neither McMahon nor Rice can demonstrate that they suffered harm as a result of justifiably relying on Chipotle's alleged false representations.**

Plaintiffs also assert violations of 73 PA. STAT. AND CONS. STAT. ANN. §§ 201-2(4)(xxi), the UTPCPL's catchall provision. (ECF No. 102, p. 7). That provision bars the engagement of "fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 PA. STAT. AND CONS. STAT. ANN. §§ 201-2(4)(xxi). Unlike subsection (ix), the catchall provision is a strict liability offense. *Gregg*, 245 A.3d at 650. "Like other strict liability offenses, liability for deceptive conduct under the [UTP]CPL cannot be excused if consumers rely upon that conduct to their financial detriment." *Id.*

"Regardless of which unfair method of competition a plaintiff challenges in a private cause of action, … Section 201-9.2 [of the UTPCPL] requires the plaintiff to establish justifiable reliance." *Id.* at 646. To demonstrate this element, a consumer must show that he or she "justifiably relied on the defendant's wrongful conduct or representation and that [they] suffered harm as a result of that reliance." *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438 (Pa. 2004) (citations omitted).

Chipotle contends that Plaintiffs are unable to demonstrate that they justifiably relied on Chipotle's alleged false representations when purchasing their food because neither Plaintiff relied on Chipotle's menu pricing in ordering. (ECF No. 230-2, p. 16). Plaintiffs reject Chipotle's argument. Relying on *Gregg*, they claim the UTPCPL is triggered "when an individual expects to

pay a certain amount – whether or not based on a direct representation by the vendor – and they are instead forced to pay a different amount." (ECF No. 241, p. 16).

Plaintiffs' argument is patently wrong.  The section of *Gregg* that Plaintiffs rely on does not stand for the proposition that the UTPCPL may be triggered if an individual expects to pay a certain amount that is not based on a direct representation by the vendor.  The Pennsylvania Supreme Court explained in that section how the plaintiffs in that case relied on the defendant's direct recommendations to their detriment.  *Gregg*, 245 A.3d at 643.

As discussed above, neither McMahon nor Rice relied upon Chipotle's alleged false representations in purchasing their food.  McMahon specifically went to Chipotle for the very purpose of being shortchanged.  (*See* ECF No. 230-11).  She entered Chipotle for Mr. Salpietro at the request of Izzy.  (*See id.*).  At the direction of Izzy, McMahon pulled out cash and entered Chipotle only with the intent to order food, pay in cash, and obtain a copy of her receipt.  (*See id.*).

Unlike McMahon, Rice did not enter Chipotle with the hope that Chipotle would fail to provide him with exact change.  Still, Rice did not engage in Chipotle's alleged false advertising.  As he admits in his own testimony, he never looked at the menu.  (ECF No. 230-15, p. 7).  Rice walked into Chipotle, ordered his food, paid for the food, and left the restaurant without engaging in Chipotle's alleged false representation.  (ECF No. 241-4, pp. 14, 16-17).

The record does not support a determination that either McMahon or Rice justifiably relied upon Chipotle's alleged false representations in their menu pricing to their detriment.  No reasonable jury could conclude otherwise.  The Court will grant the Motion as to Plaintiffs' subsection (xxi) claims within Count II.

C.      **Plaintiffs' breach of contract claims fail as a matter of law.**

Chipotle argues that Plaintiffs cannot identify a term of their purchase-and-sale contract for food that Chipotle breached. (ECF No. 230-2, p. 19). Under Pennsylvania law, a plaintiff must demonstrate the following three elements for a breach of contract claim: (1) the existence of a contract; (2) a breach of the contract; and (3) resultant damages. *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman*, P.C., 137 A.3d 1247, 1258 (Pa. 2016) (citation omitted). In essence, Chipotle argues that it did not breach either of its purchase-and-sale agreements with Plaintiffs because the evidence establishes the existence of either modifications to each agreement or waivers by Plaintiffs of any contractual right to recovery. (ECF No. 230-2, pp. 19-20). Plaintiffs do not address whether a contract modification or waiver of legal right occurred. In their Amended Class Action Complaint, Plaintiffs plead that Chipotle breached its agreement with them by "collecting more for goods … than the customers agreed to pay when ordering said goods." (ECF No. 102, p. 8). The Court ultimately holds that Rice and McMahon are barred from recovery by waiver and/or modification in their respective transactions. Since Rice and McMahon had two slightly different transactions, the Court will evaluate them separately.

1. **McMahon does not have a breach of contract claim because a contract modification does not constitute a breach.**

McMahon's breach of contract claim fails as a matter of law because, viewing the evidence in the light most favorable to the Plaintiffs, a reasonable jury could only find that McMahon agreed to a contract modification with the cashier before completing the transaction. After she ordered, McMahon testified that as she and the cashier were about to exchange cash for food, the cashier told her that Chipotle "cannot give you the correct change." (ECF No. 230-13, p. 9). In response, McMahon testified that she said "okay" and took her food. (*Id.*). Without the transaction's completion, the cashier's interjection about the ability to give exact change served as a contract

19

modification.  No consideration is needed for the contract modification to be binding.  13 Pa. Cons. Stat. and Cons. Stat. Ann. § 2209(a).

When a contract is modified, and there is a subsequent breach of the contract, it is the contract as modified that is breached.  The Court, therefore, must determine the rights of the parties on that basis, as if the modified contract was the only contract that existed.  Accordingly, Chipotle did not breach its agreement with McMahon.  The Court will grant the Motion as to McMahon's breach of contract claim within Count III.

### 2. Rice does not have a breach of contract claim because a waiver does not constitute a breach.

Rice's transaction transpired slightly differently than McMahon's.  Rice entered the restaurant and ordered his food.  (ECF No. 241-4, p. 13).  At the register, Rice tendered cash payment for the food.  (*Id.* at 14).  Unlike McMahon's interaction, however, the cashier did not modify the contract before accepting Rice's cash payment.  Instead, the cashier accepted the cash payment and handed Rice back his change, minus the coins.  (*Id.*).  After the transaction was completed, Rice then inquired why the cashier "didn't give [him] the coins."  (*Id.*).  The cashier responded that she "was instructed not to give coins today."  (*Id.*).  Rice testified that he "accepted" the cashier's response and left the restaurant with his food.  (*Id.* at pp. 16-17).

Rice's action in accepting the food and leaving the store, albeit without the $0.45 in change he was owed, constituted a waiver.  He acknowledged that he accepted the cashier's explanation for why he did not receive coins.  Rice also admitted that he chose not to escalate the situation or take any follow-up action with the cashier.  Under those circumstances, Rice knowingly waived Chipotle's alleged breach.  The Court will grant the Motion as to Rice's breach of contract claim within Count III.

### D.     Plaintiffs' claims for unjust enrichment also fail as a matter of law.

Unjust enrichment claims may be pled as an alternative to a breach of contract claim when they are based on a quasi-contract theory. *Lugo v. Farmers Pride, Inc.*, 967 A.2d 963, 970 n. 5 (Pa. Super. 2009). Quasi-contract theories usually involve circumstances where the "plaintiff seeks to recover from [the] defendant for a benefit conferred under an unconsummated or void contract." *Steamfitters Local Union No. 420 Welfare Fund v. Phillip Morris, Inc.*, 171 F.3d 912, 936 (3d. Cir. 1999). Accordingly, the unjust enrichment doctrine is not applicable where an express contract exists between the parties. *Joyce v. Erie Ins. Exch.*, 74 A.3d 157, 169 (Pa. Super. 2013) (citation omitted).

To bring an unjust enrichment claim under Pennsylvania law, a plaintiff must show: "(1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 180 (3d Cir. 2008) (citation omitted). In determining whether the doctrine applies, the Court must focus on whether the defendant has been unjustly enriched, not the intention of the parties. *Styer v. Hugo*, 619 A.2d 347, 350 (Pa. Super. 1993) (citations omitted). "[T]he doctrine does not apply simply because the defendant may have benefitted as a result of the actions of the Plaintiff." *Ne. Fence & Iron Works, Inc. v. Murphy Quigley Co.*, 933 A.2d 664, 669 (Pa. Super. 2007). Under Pennsylvania law, courts "may not make [a] finding of unjust enrichment … where a written or express contract between the parties exists." *Joyce*, 74 A.3d at 169 (quoting *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. 1999).

As the Court explained at the beginning of its analysis, contracts exist between Plaintiffs and Chipotle for the transactions at issue. Therefore, the unjust enrichment doctrine is

inapplicable. *See Joyce*, 74 A.3d at 169.  Even if a contract did not exist between the parties, the Court would grant Chipotle's Motion as to Plaintiffs' unjust enrichment claim under Count III. The record does not contain evidence that would allow a reasonable jury to find that it would be inequitable for Chipotle to retain the change at issue.  There is no dispute that both parties acquiesced to their respective transactions with cashiers after they were told that Chipotle could not provide them with coin change if they paid in cash.  When the cashier informed McMahon that she could not provide exact change, McMahon responded "okay" to the cashier before taking her food and walking out of the restaurant.  (ECF No. 230-13, p. 9).  As to Rice, he also admits that he "accepted" the cashier's explanation that she "had been instructed not to give coins back" and left the restaurant with his food.  (ECF No. 241-4, p. 16).

Moreover, there is no evidence that Chipotle forced Plaintiffs to complete their transactions.  The evidence, instead, shows that both Plaintiffs were informed that Chipotle could not give them exact change, and yet, they still chose to complete their transactions.  There is no inequity where both Plaintiffs acquiesced to a contract modification or waiver and walked out with their food.  Without more, Plaintiffs failed to adduce evidence that Chipotle "wrongfully secured or passively received a benefit that would be unconscionable" for Chipotle to retain without further compensating Plaintiffs.  *Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d Cir. 1987).

## IV.   CONCLUSION

For these reasons, Chipotle's Motion will be granted, and summary judgment will be entered in its favor.  Orders of Court will follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

_____
Dated   5/1/24

23